IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STACY S.; and JOHN AND MARY ELLEN S., on behalf of their daughter, LEIGH ANN S., a minor | CIVIL ACTION NO. 04-150E |
| Plaintiffs, | |
| | Electronically Filed |
| v. | |
| GIRARD SCHOOL DISTRICT; ROBERT SNYDER, Individually and in his capacity as Principal of Rice Avenue Middle School; and GREGORY YARBENET, a professional employee of the Girard School District | Honorable Sean J. McLaughlin |
| Defendants, | |

### BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT FOR PLAINTIFFS AGAINST DEFENDANT GREGORY J. YARBENET

### INTRODUCTION

Stacy S., and John and Mary Ellen S. on behalf of their daughter, Leigh Ann S., commenced this action before the District Court in May of 2004. Stacy S. and Leigh Ann S. were students at Rice Avenue Middle School of the Girard School District between 1998 and 2002 when Gregory Yarbenet was a science teacher there. The Plaintiffs' complaint asserts that the Defendant, Gregory Yarbenet, deprived Stacy S. and Leigh Ann S. of "rights, privileges, or immunities secured by the Constitution and laws," in violation of 42 U.S.C. §1983, when he used the authority and power derived from his position as a teacher at the Girard School District to molest and sexually abuse them. The sexual abuse occurred in Yarbenet's classroom, an adjoining storage area, in the school's television studio, in a closet, in stairwells, and in the hallway. The abuse occurred throughout the school day, during class as well as between classes and before and after school. Yarbenet eventually

pled guilty to seven counts of criminal sexual conduct with Stacy S. (121a-138a) and pled guilty to four counts of criminal sexual conduct with Leigh Ann S. (139a-159a) He is now serving an eleven- to twenty-two-year sentence for these crimes at the state correctional institution in Greensburg, Pennsylvania. Yarbenet lost his teaching position in 2003 as a result of Leigh Ann's testimony at a dismissal hearing before the Girard School Board.

By their summary judgment motion, Plaintiffs seek judgment on liability against Yarbenet and a determination that he deprived Plaintiffs Stacy S. and Leigh Ann S. of their well-established "liberty interest in being free from physical abuse in school" (*Stoneking v. Bradford Area School District*, 856 F.2d 594, 599) (3d Cir. 1988) by subjecting them to repeated sexual contact and conversation over the course of four school years while performing duties associated with his teaching position. There are no material factual disputes and judgment should be entered as a matter of law.

## STATEMENT OF FACTS

The abuse of Stacy S. and Leigh Ann S. began as a result of their being students in Yarbenet's sixth-grade science class at the Rice Avenue Middle School, and continued as a result of their participation in the school sanctioned TV club which was sponsored by Yarbenet. The Plaintiffs, Stacy S. and Leigh Ann S., were sexually abused and molested by Gregory Yarbenet for prolonged periods of time. Yarbenet's sexual exploitation of each Plaintiff persisted over the space of two school years. His molestation of Stacy began in February 1999 when she was in seventh grade, (101a-107a) and continued throughout her eighth grade year until June 2000, when she finished middle school. Yarbenet then began abusing Leigh Ann in the late fall of 2000, during the first semester of her sixth grade year, and he continued abusing her while she was a seventh grader. (23a-24a) The abuse was only interrupted when Stacy revealed the sexual misconduct to a teacher at her new school.

Yarbenet was an immensely popular teacher in the school and well known in the community. (160a-161a) Administrators and other teachers tolerated behavior from him that was far outside the norm for other teachers. It was well known that chaos reigned in his classroom (44a, 47a, 50a, 52a), that he behaved in an inconsiderate manner toward other teachers (47a, 54a-55a), that he was "goofy" in how he behaved at the school (57a-58a, 63a), that he touched female students and generally behaved in a manner that other teachers thought was at least unwise if not inappropriate (43a, 46a-47a49a, 67a-68a, 70a, 72a-73a). He had connections with NASA that convinced administrators that he was an asset to the community. (75a-76a, 59a) Yarbenet used his popularity and "touchy" style in an attempt to cover what he was doing with female students in private.

Yarbenet abused his position as a teacher to create a cult of popularity that centered around him. There was always a flock of students around him, a fact that was noted by other teachers. (35a, 65a, 78a, 80a) Female students endured his touching because they wanted to be part of the popular group. (189a-191a) He enhanced his popularity–and abused his position as a teacher--by giving female students, including Leigh Ann and her friends, answers to upcoming quizzes, and doing their math and science homework for them. (36a, 38a-39a, 162a-164a, 186a-188a)

In 1999 Stacy, at the age of 13, and then Leigh Ann, in her turn in 2000 at the age of 12, became Yarbenet's school-time "girlfriend." Stacy in fact was jokingly referred to at school as Yarbenet's girlfriend (169a-172a, 178a-181a) or even as "Mrs. Yarb" (173a-174a). Yarbenet engaged in a sexual relationship with each of the girls as part of his regular school-day routine. The sexual misconduct vis-a-vis Leigh Ann occurred primarily in his classroom (34a), where Yarbenet secured privacy by turning off the lights and covering the glass portion of his door with construction paper and decals. (81a, 182a-185a) His abuse of Stacy primarily occurred in a storage room adjacent to his classroom and in an audiovisual "TV studio" (10a). Yarbenet would hug and grope the girls, fondling them in a sexually aggressive manner. (8a-9a, 24.1a, 29a-30a) His abuse of Stacy included

repeated fondling under her clothing. (9a-10a) He forced her to touch him under his clothing and stimulate his penis, and ultimately forced her to perform oral sex on him. (109a-111a, 114a-120a)

The first incident involving Stacy occurred on February 4, 1999, when she was 13 years old. On that day Yarbenet drove several students home from a field trip. During the ride home he put his hand on her upper thigh and left it there, an action that was observed by the students in the car. (3a-4a) After dropping off the other students, he pulled up to a stop sign near Stacy's house and asked her if he could "steal a kiss." (104a-105a) When Stacy did not respond, Yarbenet leaned across the front seat and kissed her with an open mouth and fondled her breasts. (104a-105a).When they reached her home, he entered the house and spoke with her parents as though he were an ordinary teacher delivering a student after a field trip. (83a-84a) During the next day at school, Yarbenet began subjecting Stacy to what would become a pattern of daily sexual abuse. (6a-7a)

The abuse of Stacy occurred repeatedly throughout her seventh and eighth grade years. The abuse frequently took place in the storage room next to Yarbenet's classroom, a room that he shared with another science teacher (41a), or in the TV studio. (8a) When he was in the room with Stacy, he would hold the door shut with his foot or brace his body against the door so that no one could get in and Stacy could not get out, making her his prisoner. (8a) Eventually, Yarbenet began kissing her on the chest, stomach, arms, ears, and neck. (7a). It was also during this period that Yarbenet began forcing Stacy to hold and rub his penis until he ejaculated. (110a-111a) On the evening of June 1, 2000, while teachers and students were decorating for the eighth grade dance, Yarbenet took Stacy to the TV studio, and after kissing and touching her breasts, he forced Stacy's head to his waist level and placed his penis in her mouth for her to perform oral sex on him. (113a-117a) A few days later he again forced Stacy to take his penis into her mouth. (117a-120a)

When Stacy moved to Girard High School, Yarbenet attempted to continue his influence over her, acquiring the combination to her locker and leaving letters and gifts for her, delivering letters to her home room teacher for her, and climbing onto her school bus at the end of the day to deliver

letters and cards to her. (15a-16a)When it was clear that Stacy was moving out of his orbit, he began to tell her friends that she was spreading lies about him. (16a).

The first time Yarbenet abused Leigh Ann was in the late fall of her sixth-grade year when she was in Yarbenet's science class. In a room full of students, she walked up to his desk to ask a question and he forced his hand between her thighs, hidden so that students only feet away could not see what he was doing. (23a-24a) Leigh Ann was only 12 years old at the time. Over the remainder of her sixth grade and during seventh grade–until Stacy disclosed her abuse in March 2002–Yarbenet continued to touch Leigh Ann on a daily basis (25a), undeterred by the possibility of being discovered, becoming increasingly sexually aggressive. (24a-24.1a) The molestation occurred both in the classroom with students present and in private when they were alone with his door locked and the lights off.

Leigh Ann revealed in her deposition that "he [Yarbenet] was always touching me. And you need to understand that. It was all the time. That's why I can't put numbers, because it happened all the time." (32a) On many occasions, a neighbor who was a teacher at the middle school drove Leigh Ann to school before the building was open to other students and delivered her to Yarbenet's classroom. (29a) Yarbenet would molest Leigh Ann until a school aide unlocked and opened the door, and turned the lights on. (32a)

Yarbenet openly courted the girls. Students in Leigh Ann's grade noted the special treatment Yarbenet afforded Leigh Ann and assumed she was his "favorite." (186a-188a, 189a-191a) Students observed that Yarbenet would note Leigh Ann's absence in the morning before school and would ignore them once Leigh Ann entered the room. (186a-188a, 189a-191a) Yarbenet repeatedly requested that Leigh Ann come to his classroom during the day, taking her out of her study hall. (96a-98a)

On one occasion, an aide observed Yarbenet put his hands on Leigh Ann's shoulders and kiss her on the head in the presence of other students, in the middle of a crowded hallway. (79a) Yarbenet

repeatedly went to Leigh Ann's gym class and hung around Leigh Ann, disrupting the class to the point that the teacher had to ask the principal for help in keeping him out of the class. (54a) On a field trip to an Erie television station, Yarbenet held Leigh Ann on his lap in the reception area and fondled her in the presence of the receptionist and other students. (27a).

As for Stacy, Yarbenet's relationship with Stacy was so blatant that in her seventh grade yearbook, seven students wrote comments about her and Yarbenet (162a-168a, 173a-174a). When Stacy was in seventh grade, students in Yarbenet's sixth grade science class observed her and Yarbenet repeatedly disappearing into the storage room <u>during class time</u> for what the students assumed was activity of a "romantic" nature. (169a-171a,175a-177a)

On a daily basis, faculty members released Stacy and then Leigh Ann from their assigned classroom so that they could go with Yarbenet to his classroom. (5a-6a, 62a-64a, 89a-90a, 96a-98a) Thus, even when Stacy was in eighth grade, and two years removed from taking Yarbenet's sixth-grade science class, her teachers would release her to go to Yarbenet's classroom, daily. On many occasions, Yarbenet would appear at another faculty member's door and ask, without giving any reason, that Stacy be released into his custody. (5a)  When the girls would leave their regularly scheduled classes to go to Yarbenet's classroom, they would be molested in the privacy and darkened seclusion of his classroom or the adjacent storage room. (10a-11a)

The molestation of Leigh Ann ended only when Yarbenet was suspended from the school for allegations of molestation by Stacy.  Stacy had transferred out of the Girard School District and was a tenth grade student at the Northwest Pennsylvania Collegiate Academy in Erie when she revealed to a teacher there in March 2002 that Yarbenet had abused her. (18a-20a) Girard teachers who had noted Yarbenet's open behavior toward Leigh Ann suggested to the police that Leigh Ann might be a victim as well. (61a, 92a) Leigh Ann denied any abuse at that time (22a-23a, 92a-93a) and did not tell anyone about being a victim until she told a friend and then a school nurse eight months later. (31a)

Yarbenet used his position as a teacher to manipulate the girls, first as a figure of enormous popularity and then, increasingly, as a frightening adult in a position of authority within the school and community. He made Stacy and Leigh Ann crave his attention at the same time that he made them afraid of him. He convinced Stacy that his emotional well-being was dependent on her and that she had saved him from suicide. (2a) He convinced them that because of his popularity and connections, it would be useless to report him. Yarbenet convinced Stacy that no one would believe her reports of sexual abuse, or if they did, that they would blame her for the abuse. (14a) He even went so far as to threaten Stacy physically.

> He had spent so much time telling me about how he was on the suicide prevention team and a Rape Crisis counselor, and is friends with all the police and everybody around. And it was so clear that he was such great friends with everybody in administration and the counselors and secretaries. There was no one I felt I could turn to who would believe me. . . The only thing worse than going along with it was trying to go against it. If I resisted, he would become very cross, and either try to make me feel guilty into doing what he wanted. You know, he would start to cry or something. Or push me into a wall or make me bend backwards over a counter. There were times when I resisted and he bit me, to the point of drawing blood. And, I mean at one point he did threaten that if anybody found out, he said that he would go away for a very long time, and he wouldn't let that happen. That he had all kinds of wilderness training skills, and that he would kidnap me, and take me to the coast, and tie me to a tree there, keeping me alive and raping me as often as possible, tied to this tree, until I died. . . . That was in March or April of my seventh grade year." (9a)

It was clear that even though seemingly everyone in the school environment -- teachers, aides, administrators, and other students--was aware of the "special" relationship Yarbenet had with Stacy and with Leigh Ann, no one was going to release the girls from the hell they were enduring. Thus,

...

neither of the plaintiffs was able to reveal the abuse as long as they were within his sphere of influence at the school.

A full compilation of relevant facts labeled "Concise Statement of Material Facts" is attached hereto.

**I. PLAINTIFFS STACY S. AND JOHN AND MARY ELLEN S., ON BEHALF OF THEIR DAUGHTER LEIGH ANN S., ARE ENTITLED TO SUMMARY JUDGMENT AGAINST DEFENDANT GREGORY J. YARBENET BECAUSE THERE IS NO GENUINE ISSUE OF MATERIAL FACT AND THE FACTS SHOW THAT THE PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW.**

Summary judgment is appropriate when the moving party is entitled to judgment as a matter of law and there is no genuine dispute of material fact. See *Gotshall v. Consolidated Rail Corp.*, 56 F.3d 530, 533 (3d Cir. 1995) citing Fed. R. Civ. P. 56(c). In order to defeat "a properly supported summary judgment motion, the party opposing it must present sufficient evidence for a reasonable jury to find in its favor." *Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995) (citing *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 250-52, 106 S.Ct. 2505, 2511-12, 91 L.Ed.2d 202 (1986)).

The Court will "ask whether '[taken] in the light most favorable to [the non-moving party], . . . the facts alleged show [the defendant's] conduct violated a constitutional right'" (*Blanford v. Sacramento County*, 406 F.3d 1110 (9th Cir 2005), citing *Saucier v. Katz*, 533 U.S. 194 (2001). The facts of this case, when viewed in the light most favorable to the defendant, establish that defendant Yarbenet, while employed by the state, violated the plaintiffs' constitutional right to be free from sexual molestation in school.

The Court should grant Plaintiffs' motion for summary judgment because Yarbenet's guilty pleas foreclose future contest of material facts supporting the assertion that he violated the constitutional rights of Stacy and Leigh Ann. Yarbenet was charged with criminal conduct arising out of his molestation of Stacy and Leigh Ann at their school and pled guilty to several of the charges. Stacy S. testified at Yarbenet's preliminary hearing as to numerous acts of inappropriate sexual touching and kissing occurring at the school (108a), as well as two occasions when Yarbenet forced her to perform oral sex on him (109a-111a, 114a-120a). Leigh Ann testified at Yarbenet's termination hearing before the school board that Yarbenet had repeatedly engaged in inappropriate sexual touching and conversation with her. The plaintiffs are entitled to summary judgment because the evidence shows that defendant Yarbenet, while employed by the Girard School District, deprived them of their Fifth Amendment right to be free from sexual abuse while in school, their Fourteenth Amendment substantive due process liberties, and their Fourth Amendment right to be free from unreasonable seizure.

**A. THERE IS NO GENUINE DISPUTE OF MATERIAL FACT BECAUSE DEFENDANT YARBENET PLED GUILTY TO CRIMINAL CHARGES FOR DEVIATE SEXUAL INTERCOURSE, INDECENT ASSAULT, AND CORRUPTION OF MINORS FOR CONDUCT WITH STACY S. AND LEIGH ANN S.**

Yarbenet eventually pled guilty to a number of criminal offenses arising from his conduct with Stacy and Leigh Ann. At the guilty plea hearings which occurred relative to the criminal charges lodged against Yarbenet, the legal definitions of each charge were explained to him and the Court took all appropriate measures to ensure that Yarbenet's guilty pleas had been entered "knowingly, voluntarily, and intelligently." (121a-159a). As part of the guilty plea colloquys Yarbenet admitted to abusing and molesting Stacy and Leigh Ann. Yarbenet's guilty pleas to seven counts of unlawful

sexual contact with Stacy and four counts of unlawful sexual contact with Leigh Ann preclude him from relitigating the issues contained in those proceedings.

**1. Under the doctrine of issue preclusion, the defendant is prohibited from relitigating issues and/or claims that have already been adjudicated in a judicial proceeding.**

Issue preclusion "forecloses re-litigation in a later action [ ] of an issue of fact or law which was actually litigated and which was necessary to the original judgment." *Hebden v. Workmen's Compensation Appeal Bd.*, 534 Pa. 327, 330, 632 A.2d 1302, 1304 (1993); see also Restatement (Second) of Judgments, § 27 cmt. c (1982) ("An issue on which relitigation is foreclosed may be one of evidentiary fact, of 'ultimate fact' (i.e. the application of law to fact), or of law."). *Witkowski v. Welch*, 173 F.3d 192, 199 (3rd. Cir 1999.)  See also *Delaware River Port Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir.2002). In short, "issue preclusion prevents re-litigation of the same issues in a later case." *Id.*, at 572.  By virtue of 28 U.S.C. § 1738, the Full Faith and Credit Act, federal courts must give state court decisions the same preclusive effect as they would be given "in the courts of the rendering state." *Id.* at 572-73.  In order for issue preclusion to apply under Pennsylvania law, four factors must be present: (1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from re-litigating the issue was fully represented in the prior action. *Dam Things from Denmark v. Russ Berrie & Co.*, Inc., 290 F.3d 548, 559 n. 15 (3d Cir.2002); *Raytech Corp. v. White*, 54 F.3d 187, 190 (3d Cir.1995).

The preclusive effect of the guilty plea is also determined by state law.  The Third Circuit has held that "in determining the collateral estoppel effect of a prior state court criminal proceeding, we look to the law of the state where the criminal proceeding took place." *Anela v. City of Wildwood*, 790 F.2d 1063, 1068 (3d Cir. 1986). The Third Circuit reiterated this doctrine in *Delaware River*

*Port Authority v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir. 2002), stating, "When determining a law's preclusive effect, a federal court must look to the law of the adjudicating state." Therefore, the Court must examine Pennsylvania statutory and common law to determine the preclusive effect of Defendant Yarbenet's eleven guilty pleas.

The issues concerning the occurrence of the sexual assaults in this case are identical to the issues addressed in the state court criminal case, thus issue preclusion forecloses any defenses to the constitutional claims. Yarbenet's guilty pleas to charges of committing deviate sexual intercourse, indecent assault, and corruption of the minors Stacy and Leigh Ann at Rice Avenue Middle School eliminate any material factual dispute in a civil suit based on the same conduct. The defendant's actions cannot now be relitigated, as a matter of law.

**2. Pennsylvania law provides that a guilty plea precludes relitigation of facts stated in the criminal indictment.**

**a. Under Pennsylvania law, a guilty plea qualifies as an issue already adjudicated for purposes of issue preclusion.**

The Pennsylvania Supreme Court has held that "a guilty plea constitutes an admission to all facts alleged in the indictment." *Commonwealth Dept. of Transportation v. Mitchell*, 517 Pa. 203, 535 A.2d 581, 585 (1987); *Commonwealth v. Anthony,* 504 Pa. 551, 475 A.2d 1303, 1307 (1984). The Third Circuit in *M.B. v. City of Philadelphia*, 128 Fed. Appx. 217 (not precedential) (3d Cir. 2005) follows an analogous approach to a §1983 claim. The court states that "[U]nder Pennsylvania law, 'a conviction from a guilty plea is equivalent to a conviction from a trial by jury.'" M.B. Id at 225 (citing *DiJoseph v. Vuotto*, 968 F. Supp. 244, 247 (E.D.Pa. 1997) (citing *Commonwealth Dept. of Transportation v. Mitchell*, 517 Pa. 203, (1987).  The approach is predicated upon the operative

facts being "identical" for both the criminal and civil proceedings. *Mitchell*, 517 Supra. 535 A.2d at 585.[1]

### b.  The facts necessary to show that Yarbenet was guilty of criminal sexual conduct and those necessary to show civil liability are identical.

By pleading guilty and thereby admitting to engaging at Rice Avenue Middle School to indeviate sexual intercourse with the plaintiff Stacy and to indecent assault on and corruption of the minors Stacy and Leigh Ann, Yarbenet has already admitted to a set of facts which sustains the Plaintiffs' constitutional claims. In *M. B.*, the defendant had pled guilty to criminal charges of sexual assault, indecent contact, and corruption of a minor for having sexual contact with a girl under the age of ten. *M. B.*, 128 Fed.Appx. at 222. The court determined that the facts asserted in the criminal indictment, i.e. that the defendant had access to the victim and that he had used that access to sexually assault her; would also support a determination of civil liability from a reasonable jury. Id. at 226.

The facts used to support Yarbenet's criminal culpability involve the same appalling pattern of sexual contact which underlies the constitutional claims of Stacy and Leigh Ann.[2] Furthermore, Yarbenet's guilty pleas to improper sexual contact with Stacy and Leigh Ann evince his admission of all facts avowed in the criminal charges. Because the evidence presented for this civil suit would be identical to that which was presented for criminal action and Yarbenet has admitted the essential facts, Yarbenet is barred from relitigating issues previously admitted or

---

[1] In *M. B.*, the court accepted a guilty plea by one defendant accused of sexual abuse of a minor, as preclusive with regard to that defendant's liability in the corresponding civil suit. This practice is justified because as mentioned above, an admission of guilt by a defendant is really an acknowledgment of all the facts avowed in the indictment. See *M.B. v. City of Philadelphia*, at 226.

[2] This evidence is much greater than the circumstantial evidence and lack of witness testimony which was accepted in *M.B.*, *see M.B.* 228 Fed. Appx. at 226.

adjudicated. The defendant, by his guilty pleas, has admitted all facts alleged in the criminal indictments. Therefore, he is prohibited from asserting that there is any genuine issue of material fact because all of the facts necessary to present a prima facie case have already been determined.

### B. THE PLAINTIFFS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE DEFENDANT'S SEXUAL ABUSE VIOLATED THE PLAINTIFFS' FOURTH, FIFTH, AND FOURTEENTH AMENDMENT RIGHTS.

The defendant, by his inappropriate sexual conduct, has deprived the plaintiffs of several constitutional liberties. The plaintiffs here assert three theories of deprivation; a finding of even one of them entitles Plaintiffs to civil relief.

**1. Yarbenet violated Stacy and Leigh Ann's rights of privacy and personal security guaranteed by the Fifth Amendment, when he touched them sexually and caused them to suffer severe emotional injury.**

A public school student has a Fifth Amendment and Fourteenth Amendment right to be free from the use of excessive disciplinary force in school, see *Metzger v. Osbeck*, 841 F.2d 518, 520 (3d Cir. 1988). This right has been broadened in the Third Circuit to include a right to be free from sexual molestation at the hands of one's public school teacher. *Stoneking* 856 F.2d 594, 599 (vacated on other grounds *Smith v Stoneking*, 489 U.S. 1062, 109 S.Ct. 1333, 103 L.Ed 2d 804 (1989), where the court held that a female student had a "constitutionally protected right to be free from sexual abuse by her school teachers." The plaintiffs' constitutional right to be free from sexual abuse at

school is at least as protected as the right to be free from excessive physical disciplinary actions. see *Stoneking, 856 F.2d 594, 599.* [3]

Stacy and Leigh Ann's injury is not qualitatively different from the injuries detailed in *Stoneking,* except that in this case, the abuse occurred over a longer period of time and with younger, more vulnerable students. Yarbenet repeatedly violated Stacy and Leigh Ann's rights to personal security when he would kiss and touch them in a sexual manner, including touching their breasts, thighs, and genital area, and also when he forced Stacy to touch his penis. Additionally, Yarbenet forced Stacy to perform oral sex on him twice in the school's TV studio. Yarbenet also touched Leigh Ann in a sexual manner repeatedly, fondling her buttocks and thighs, and hugging her in a sexually aggressive manner. Yarbenet's conduct is at least as abusive as the teacher's in *Stoneking,* and violates Stacy and Leigh Ann's Fifth Amendment rights to personal privacy, bodily integrity and security. Therefore it is appropriate for this court to enter summary judgement on the issue of whether Yarbenet has violated the Plaintiffs' constitutional rights under the Fifth and Fourteenth Amendments to the Constitution.

### 2. The Defendant violated Stacy and Leigh Ann's Fourteenth Amendment substantive due process rights when he deprived them of their liberty without due process of law.

The Supreme Court in *Ingraham v. Wright*, 430 U.S. 651, 97 S.Ct.,1401, 51L.2d 711 (1977) cited the Fourteenth Amendment as an appropriate vehicle for evaluating a teacher's physical contact with students, see *Id.* at 674. The *Ingraham* Court said, in the course of establishing the right to be free from bodily restraint as a historical and fundamental right, that "[w]hile the contours of this

---

[3] In *Stoneking*, a jury found that a school teacher had violated a female student's constitutional rights by touching and kissing her breasts, exposing himself to her, forcing her to handle his genitals, and occasionally compelling her to engage in oral sex with him. *Stoneking,* 599, fn. 8.

historic liberty interest in the context of our federal system of government have not yet been defined precisely, they have always been thought to encompass freedom from bodily restraint and punishment." *Ingraham* at 674. *Ingraham* discussed only the appropriate level for physical administration of discipline. The Court ruled that ordinary corporal punishment did not violate substantive due process rights of the student. The Third Circuit and other courts have extended the ruling and recognize that a student has a constitutional right to be free from excessive force at the hands of teachers. Hence, the Third Circuit has held that "discipline accomplished through excessive force and appreciable physical pain may constitute an invasion of the child's Fifth Amendment liberty interest in his personal security and a violation of substantive due process prohibited by the Fourteenth Amendment." *Metzger v. Osbeck*, 841 F.2d 518, 520. This analysis applicable to corporal punishment has now been extended, also, to protect students from sexual assault at the hands of their teachers.

In other words, an excessive use of force in a school can violate the substantive due process clause of the Fourteenth Amendment. *Metzger*, 841 F.2d at 519 (citing *Hall v. Tawney,* 621 F.2d 607, 611 (4th Cir. 1980) (construing *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977).[4] By analogy, this rule should be extended to sexual abuse of a student by a teacher, as well. The Third Circuit regards a student's right to be free from sexual abuse at school to be on par with the right to be free from excessive disciplinary action, *Stoneking*, 856 F.2d at 599. Several Pennsylvania District Courts have interpreted cases consistent with that principle. See *Seneway v. Canon McMillan School District*, 969 F. Supp. 325, 331 (W.D. Pa. 1997) (plaintiff who had been sexually abused by wrestling coach

---

[4] The courts have extended *Ingraham* for the proposition that excessive force violates the Fourteenth Amendment's substantive due process rights. The Tenth Circuit expanded the Supreme Court's holding in *Ingraham*, by stating, "[B]y acknowledging that corporal punishment implicates a fundamental liberty interest protected by the Due Process Clause, we believe that opinion clearly signalled that, at some degree of excessiveness or cruelty, the meting out such punishment violates the substantive due process rights of the pupil." *Garcia v. Miera*, 817 F.2d 650, 654 (10th Cir. 1987). The Fifth Circuit agrees that teacher-on-student sexual harassment is a Fourteenth Amendment issue, see *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994) ("We hold first, that schoolchildren do have a liberty interest in their bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment and that physical sexual abuse by a school employee violates that right").

was entitled to relief for violation of her Fourteenth Amendment right to bodily integrity); see also *Sciotto v. Marple Newtown School District*, 81 F. Supp.2d 559 (E.D. Pa. 1999) (District Court expanded the right to include freedom "from school officials' deliberate indifference to, or affirmative acts that increase the danger of, serious injury from unjustified invasions of bodily integrity perpetrated by third parties in the school setting), see also *S.M. v. The Lakeland School District,* 148 F. Supp.2d 542, 547 (M.D. Pa 2001) (Teacher's conduct which consisted of yelling severely at a student for not comprehending a math problem, while not shocking to the conscience, would be evaluated under the Fourteenth Amendment).

Third Circuit precedent and common sense tell us that sexual molestation of a middle school aged student involves at least as serious an invasion of personal security and deprivation of a liberty interest as does corporal punishment. Stacy and Leigh Ann were forced to suffer Yarbenet's sexual abuse over the course of several years on an almost daily basis, and the injuries suffered by them are immeasurably greater than a simple spanking for misbehavior. When Yarbenet sexually molested them, his conduct was a clear violation of their substantive due process rights to bodily integrity. Stacy and Leigh Ann suffered these violations at the hands of a man who systematically gained their trust and confidence and then exploited this advantage to achieve his own nauseating satisfaction. Therefore, it would be appropriate for the court to enter summary judgment against Yarbenet concluding that his conduct violated Stacy's and Leigh Ann's rights under the substantive due process protections of the Fourteenth Amendment to the Constitution.

### 3. The Defendant violated the Stacy and Leigh Ann's Fourth Amendment rights to be free from unreasonable seizure when he temporarily imprisoned both girls on several occasions both inside the school and outside.

The evidence shows that Yarbenet would lure Stacy and Leigh Ann to areas of the school where he could hold a door shut while he molested the girls, preventing them from leaving and

preventing others from entering. In particular this happened in the storage room adjoining his classroom and in the school's television studio. The Supreme Court in *Graham v. Connor,* 490 US 386,395,109 S.Ct. 1865, 187, 104 L.E2d. 443 (1984) held that " . . . all claims of excessive force . . . or other seizure, should be analyzed under the Fourth Amendment." The Fourth Amendment states in relevant part, "The right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated. U.S. CONST. amend. IV."

Various teachers testified that they tried to enter the storage room adjacent to Yarbenet's classroom, the TV studio, and/or Yarbenet's classroom but were unable to freely gain access to the room because the doors were blocked or locked. (12a, 45a, 63a-64a). Stacy and Leigh Ann were being held in those rooms with no possibility of egress because Yarbenet was using his body to hold the door shut or was wedging his foot in such a way that the door could not be opened. (11a)

On more than one occasion when Stacy attempted to get away, Yarbenet bit her so hard that she bled. (9a). On one occasion Stacy was trying to run out of the TV studio and was climbing over a table in her effort to escape from Yarbenet. Yarbenet filmed her attempted escape and showed the film repeatedly, to her humiliation. (86a-87a). On one occasion, Yarbenet molested Leigh Ann in his moving vehicle when she had no escape route. (31a). On another occasion, Yarbenet gave Leigh Ann a ride in a "powered parachute," a device like a hang glider. (33a). During the ride, when they were in the air and strapped in, Yarbenet leaned his head back and pushed it into the area between Leigh Ann's legs and left it there for a period of time, when she had no means of escaping. (33a). By preventing the girls from escaping the classroom, storage room, TV studio, or other locations, Yarbenet was in effect seizing the girls' person and restricting their freedom of movement.

Additionally, evidence that Yarbenet handled the girls in a sexual manner evinces severe and excessive force. The Court in *Saucier* supports that use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness (*Saucier v. Katz* supra at 282). Objective standards of reasonableness in that case could be determined by asking "whether it would

be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. See *Wilson v. Layne*, 526 U.S. 603, 615 (1999)." Although this analysis is usually conducted in the course of evaluating police conduct, the doctrine also provides guidance for the case at hand.

Gregory Yarbenet did not possess even a subjective expectation that his conduct was lawful or appropriate, let alone an objective concurrence from the "reasonable person." Gregory Yarbenet was well into his fifties when he began subjecting the prepubescent plaintiffs to his pattern of terror. Sexual contact with a young child cannot be seen as legal or accepted conduct and therefore, Yarbenet never had the expectation that his kissing, fondling, and other molestation was lawful or appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court enter summary judgment on liability against the Defendant Gregory Yarbenet.

Respectfully submitted,

s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
Carolyn Spicer Russ, Esquire
Pa. I.D. No. 36232
Richard Matesic, Esquire
Pa. I.D. No. 72211
*Attorneys for Plaintiffs*
1007 Mt. Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975
(412) 492-8978 (facsimile)

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 18, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Richard A. Lanzillo, Esquire
KNOX McLAUGHLIN GORNALL & SENNETT, P.C.
120 West Tenth Street
Erie, PA 16501

      and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

Edward J. Betza, Esquire
150 East Eighth Street
Erie, PA 16501


s/Edward A. Olds, Esquire