```
 1  COMMONWEALTH OF PENNSYLVANIA  : IN THE COURT OF COMMON PLEAS

 2              VS.              : OF ERIE COUNTY, PENNSYLVANIA

 3  GREGORY J. YARBENET          : CRIMINAL DIVISION

 4                               : No. 1291 OF 2003

 5

 6

 7                  PLEA AND SENTENCING

 8

 9        Proceedings held before the Honorable Ernest J.

10        DiSantis, Jr., in Courtroom H, Erie County

11        Courthouse, Erie, Pennsylvania, on Monday, June 2,

12        2003, commencing at 8:43 a.m.

13

14

15

16

17

18  APPEARANCES:

19  JAMES VOGEL, Esquire, and
    DAMON C. HOPKINS, Esquire, appearing on behalf of the
20  Commonwealth.

21  PHILIP B. FRIEDMAN, Esquire, appearing on behalf of the
    Defendant.

22

23

24  Jeanne M. Sykes - Official Court Reporter

25
```

COPY

139a

1    (Defendants sworn.)

2    MR. VOGEL:  Ladies and gentlemen, if I could

3    have your attention then please for the next several moments?

4    My name is Jim Vogel from the DA's office, and along with

5    Attorney Damon Hopkins from our office we are going to be

6    handling the proceedings here this morning.  What I want to

7    do is review with you as a group the rights involved in

8    today's proceedings.

9    There are a number of you that are here

10   scheduled to enter pleas.  If you do in fact decide to enter

11   a plea here this morning, you give up certain important

12   rights, and I am going to explain them to you now.

13   You have a right to plead not guilty and stand

14   trial on all the charges originally filed against you.  You

15   have the right to have that trial be a trial by jury.  At a

16   jury trial you would be presumed innocent, and the burden of

17   proof would be on the Commonwealth.  We would have to present

18   evidence and witnesses to prove your guilt beyond a

19   reasonable doubt.

20   At a trial you'd be able to participate with

21   your attorney in selecting a jury of 12 citizens from Erie

22   County who would hear your case.  Through your attorney you

23   could cross-examine any witnesses called against you.  You

24   could offer evidence yourself if you wanted or remain silent

25   if that was your choice.

140a

1          At the conclusion of the jury trial the jury's

2   verdict must be unanimous.  They must agree 12 to nothing

3   before they could find you guilty or not guilty, for that

4   matter, of any charge against you.  By entering a plea here

5   today you would forever give up your right to a jury trial

6   and all the rights that go along with a jury trial.

7          When you are called forward individually,

8   please bring with you the forms I passed out because we need

9   to sign them and give them to the judge as a part of the

10  proceedings today.  When you are up in front of the judge

11  individually, I will ask you at that time if you have any

12  questions about your trial rights.  We'll go on to talk about

13  things that apply to your individual cases, though, including

14  the maximum sentences in your case, any plea bargains that

15  may be involved in your case, legal definition and factual

16  basis for whatever charges you are entering a plea to.

17         In addition, it's possible that some of you who

18  enter pleas may also be sentenced here today, plus we have a

19  couple people that are scheduled here for sentencing today.

20  So I'm also going to review with all of you as a group the

21  post-sentencing rights that everyone has in a criminal case

22  for those of you who do in fact get sentenced here today.

23         After you get sentenced, you can file what's

24  called a post-sentencing motion.  That means any request you

25  would want to make of the judge after sentencing.  It could

141a

1  include a challenge to the voluntariness of the plea entered
2  in your case or a request for new trial if your case had gone
3  to trial.  It can also include a request for modification or
4  change in whatever sentence you receive from the judge.

5          If you decide you would like to file a
6  post-sentencing motion, it can be filed by either you or your
7  attorney, but it must be filed in writing with the court
8  within ten days from today's date.

9          In addition to that right, you also have the
10 right to take an appeal to the Superior Court after you get
11 sentenced.  If you decide you want to take an appeal but do
12 not file a post-sentencing motion, you can still take an
13 appeal.  And in that case you begin the process by filing a
14 form called a Notice of Appeal within 30 days from your
15 sentencing date.

16         However, if you do file a post-sentencing
17 motion, then you should not immediately file your Notice of
18 Appeal because you need to wait until after the judge rules
19 on your post-sentencing motion.  Once he enters an order on
20 that motion, you have 30 days from the date of that order to
21 file your Notice of Appeal.

22         You have the right to be represented by an
23 attorney for any post-sentencing motion or appeal that you
24 may want to pursue.  And if you can't afford to hire your own
25 attorney, you can receive free legal services through the

142a

1  public defender's office or outside counsel program for all

2  these matters.

3          When you are called forward individually, we'll

4  ask you if you have any questions about your rights, sign the

5  forms that explain them, and we'll deal with the things that

6  apply to your individual cases.  Thank you.

7          (Whereupon, defendant's appellate rights were

8  concluded, and the following plea colloquy commenced at 8:48

9  a.m.)

10          MR. HOPKINS:  With the court's permission I

11  would call Gregory Yarbenet first.  Your Honor, this is the

12  time set for a plea and sentencing I believe of Gregory J.

13  Yarbenet at 1291 of 2003.  Mr. Yarbenet, were you present

14  when Attorney Vogel went over with you the rights you have

15  prior to entering a plea?

16          GREGORY YARBENET:  Yes.

17          MR. HOPKINS:  Did you understand those

18  rights?

19          GREGORY YARBENET:  Yes, I did.

20          MR. HOPKINS:  Did you understand the rights

21  that you have following your sentencing?

22          GREGORY YARBENET:  Yes, I do.

23          MR. HOPKINS:  My understanding is that you are

24  going to plead guilty as charged in the information.

25  Essentially what that means, I need to go over the possible

143a

1  maximums with you.  Count one, you face up to $10,000 in

2  fines, five years incarceration, count two $10,000 in fines,

3  five years incarceration, counts three and four $5,000 in

4  fines, two years incarceration.  There is also a $250 Act 57

5  fee.  That totals a possible $30,000 in fines, 14 years

6  incarceration.  Do you understand the possible maximum

7  penalties you face at this docket?

8              GREGORY YARBENET:  Yes, sir.

9              MR. HOPKINS:  Do you have any questions you

10  want to ask about the rights contained in this sheet?

11              GREGORY YARBENET:  No, I don't.

12              MR. HOPKINS:  Have you signed that document?

13              GREGORY YARBENET:  The best I could.

14              MR. HOPKINS:  Mr. Yarbenet, before I go on with

15  the plea, in the event that we do go to sentencing, as is

16  scheduled, do you have any questions regarding post-

17  sentencing rights that were read to you?

18              GREGORY YARBENET:  No, I understood them.

19              MR. HOPKINS:  Will you sign here where it's

20  marked defendant?

21              (Defendant complies.)

22              THE COURT:  Let's go off the record for an

23  second.

24              (Off-the-record discussion.)

25              MR. HOPKINS:  Mr. Yarbenet, I need to go over

144a

1  the legal and factual basis of the charges against you.  At

2  count one you are charged that on or about or between the

3  times of March of 2001 and May of 2001 in Erie County,

4  Pennsylvania, that you did commit the crime of corruption of

5  minors, that you, being 18 years or older, by any act did

6  corrupt or tend to corrupt the morals of any child under the

7  age of 18, that you, being age 54, did engage in indecent

8  contact with a juvenile, initials L.A.S., age 14, her date of

9  birth being 8/6/88.  Specifically you fondled her buttocks

10 and inner thighs on an almost daily basis occurring at Rice

11 Avenue Middle School, 1100 Rice Avenue.  Do you understand

12 the legal and factual basis of that charge?

13             GREGORY YARBENET:  Yes, I do.

14             MR. HOPKINS:  How do you plead?

15             GREGORY YARBENET:  Plead guilty.

16             MR. HOPKINS:  Count two, you are charged with

17 corruption of minors, that between -- on an almost daily

18 basis from March to April of 2002, that you, being age 54 or

19 55, did engage in indecent contact with a juvenile, initials

20 L.A.S., age 14, date of birth 8/16/88.  Specifically you did

21 fondle her buttocks and/or inner thighs on an almost daily

22 basis, this occurring at 1100 Rice Avenue, Girard, Rice

23 Avenue Middle School.  Do you understand the legal and

24 factual basis at Count Two?

25             GREGORY YARBENET:  Yes, sir.



1          MR. HOPKINS:  How do you plead?

2          GREGORY YARBENET:  Plead guilty.

3          MR. HOPKINS:  Count three, you are charged with

4  indecent assault, that you did engage in indecent contact

5  with a juvenile, L.A.S., age 13 at the time, date of birth

6  being 8/16/88, that you at the time were over 18 and were

7  four or more years older than the juvenile victim.

8  Specifically you were age 54 at the time.  You did engage in

9  indecent contact by fondling her buttocks and/or inner thighs

10 on an almost daily basis from September to December 2001 at

11 Rice Avenue Middle School, 1100 Rice Avenue, Girard.  Do you

12 understand the legal and factual basis at count three?

13          GREGORY YARBENET:  Yes, sir.

14          MR. HOPKINS:  How do you plead?

15          GREGORY YARBENET:  Plead guilty.

16          MR. HOPKINS:  And count four, you are charged

17 with indecent assault between March and April of 2002,

18 occurring at Rice Avenue Middle School, 1100 Rice Avenue,

19 Girard, that you, being four or more years older than

20 juvenile victim, initials L.A.S., age 13, at the time, that

21 you did engage in indecent contact with the victim,

22 specifically by fondling her buttocks and/or inner thighs on

23 an almost daily basis.  Do you understand the legal and

24 factual basis at count four?

25          GREGORY YARBENET:  Yes, I do.

1460

1          MR. HOPKINS:  How do you plead?

2          GREGORY YARBENET:  I plead guilty.

3          MR. HOPKINS:  Mr. Yarbenet, has anybody

4    promised you what your sentence is going to be here today?

5          GREGORY YARBENET:  No.

6          MR. HOPKINS:  Has anybody forced you or somehow

7    coerced you to enter this plea?

8          GREGORY YARBENET:  No.

9          MR. HOPKINS:  Are you doing this of your own

10   free will?

11         GREGORY YARBENET:  Yes.

12         MR. HOPKINS:  On the back of the information I

13   need you to sign where it's marked defendant, have your

14   attorney sign.

15         (Defendant complies.)

16         THE COURT:  I will take the sentencing rights

17   sheets if they have signed it.  Mr. Yarbenet, do you

18   understand everything that's gone on here today, sir?

19         GREGORY YARBENET:  Yes, I do.

20         THE COURT:  Do you have any questions?

21         GREGORY YARBENET:  Not at this time.

22         THE COURT:  Based upon my observations of you

23   and the other matters of record, I find that your plea has

24   been knowingly, voluntarily and intelligently entered.  I

25   will accept your plea at this time.  Do you have any

147a

1  questions at all about your post-sentencing motions?

2          GREGORY YARBENET:  No, I don't.

3          THE COURT:  Then we will proceed to sentencing

4  at this time.  I'll hear from defense counsel.

5          MR. FRIEDMAN:  Your Honor, Mr. Yarbenet is 56

6  years of age.  He's married to Liz.  They are the parents of

7  a 12-year-old son Sean.  He's a graduate of Edinboro

8  University and received his master's at Edinboro as well as

9  bachelor's and has taught the Girard School District since

10  1969.  He was a very, very highly acclaimed teacher.  He was

11  chosen for NASA projects, taught thousands of students, was

12  extremely well respected, was even runner up one year for the

13  Teacher of the Year Award for Erie County.

14          His first wife died in 1986, and he developed

15  some rather severe psychiatric problems as a result of these

16  incidents and has been under Dr. Wettstein's care in

17  Pittsburgh since this occurred.  He is now serving an 11-to-

18  22-year prison sentence imposed in April for activities in

19  the Girard School District.  Those activities are

20  substantially different than these.

21          These particular offenses involved no sexual

22  contact.  The young girl testified she was not touched below

23  the clothing, never touched in the genital area, never

24  touched on the breast, there was hugging went on.  Entirely

25  inappropriate, no question about it, should never have

148a

occurred. We don't want to see teachers involved in any

contact with students. It was highly improper, and he

recognizes that.

He's now been in jail since April, and he is

going to be serving a lengthy prison sentence. As the

court's aware, even on 11 to 22 years he may not be out for

who knows how long, and he is 56 years of age. The

sentencing guidelines in this case are RS to three and RS to

four. These are misdemeanor offenses, but I would ask the

court to run any sentence the court imposes concurrently with

the other sentences. I believe it's appropriate.

The court has to consider the interests of

justice. What are we going to do with this man? He is going

to be in prison for a long, long time. Is it really

necessary to make him serve even more time so he actually

never gets out of prison?

I think we need to look at some of the good

things he's done in his life. He came forward, he's admitted

to these things. He didn't have this young lady go through a

preliminary hearing. At preliminary hearing he worked this

out with the district attorney's office. He's come in today

and entered this plea.

He's going to be serving a lengthy prison

sentence. I would ask the court to take all these factors

into consideration.

149a

1    THE COURT:  Thank you.  Mr. Yarbenet, is there
2  anything you want to say, sir?
3    GREGORY YARBENET:  Yes, I would, Your Honor.
4  From the deepest part of my heart I am truly sorry to Leigh
5  Ann and to the family, to the community, to the court, Your
6  Honor, to -- but, more importantly, I think my actions, I
7  want to have them speak louder than my words.  That's why I
8  didn't want her to go through even a hearing, the anxiety,
9  the trauma of a trial that could come about.  That's why I
10  pleaded the way I did.
11    My life is basically over, but hers is just
12  starting.  And I want her to be on that road that has so many
13  opportunities that will open up to her, and I don't want her
14  to have anything to interrupt that process she is going
15  through right now.  I wish her the best.  I want her to reach
16  for the stars.  And I am begging for forgiveness from the
17  family, from her, and from you, Your Honor.  And whatever
18  judgment you give me, I respect that.  Thank you.
19    THE COURT:  Thank you.  I will hear from the
20  Commonwealth.
21    MR. HOPKINS:  Your Honor, before I address the
22  court, Leigh Ann's father would like to speak to Your Honor.
23    THE COURT:  Certainly.
24    JOHN DENNIS S███████, having
25  been duly sworn, was examined and testified as follows:

150a

```
 1                        DIRECT EXAMINATION
 2   BY MR. HOPKINS:
 3         Q.    Sir, would you state your full name?
 4         A.    John Dennis S██████.
 5         Q.    Mr. S██████, your daughter is Leigh Ann?
 6         A.    Yes.
 7         Q.    She is the victim in this case?
 8         A.    Yes.
 9         Q.    You indicated to me before today's proceeding
10   that you wanted to address the court.  Go ahead and do that
11   at this time.
12         A.    Your Honor, this has been a very emotional time
13   for my daughter, for my whole family.  Mr. Yarbenet, I feel,
14   used his position as a teacher.  He manipulated other
15   students besides my daughter there at that school.  His
16   selfishness for what he did, he showed no remorse during his
17   actions.  He did them just for his own purpose, and I would
18   like to see him be sentenced as a consecutive sentence to put
19   the word out to the community of not just Girard but all of
20   Erie County that teachers cannot abuse their positions and
21   show mistrust toward other students.  I guess that's all,
22   Your Honor.
23                  THE COURT:  Any questions, counsel?
24                  MR. FRIEDMAN:  No questions.
25                  THE COURT:  Thank you, sir.  You may be seated.
```

15/a

1          MR. HOPKINS:  Your Honor, you have I believe

2    the letters from Leigh Ann and her family.

3          THE COURT:  No, I don't.

4          MR. HOPKINS:  They were given to the probation

5    department a week ago.

6          THE COURT:  No.  I think one of the

7    difficulties was that the probation department was not

8    anticipating the sentencing here today.  You may summarize

9    them if you'd like.

10          MR. HOPKINS:  Your Honor, you have a little

11   girl who is sitting back there in the courtroom with her

12   mother and her father, who on a daily basis went to school,

13   went to see her trusted teacher, her science teacher, who,

14   when he would call her up to the desk, would reach around,

15   rub her rear end, would reach in between her inner thighs and

16   rub her there, as she is standing there not understanding

17   exactly why is he touching me or why is this going on.  He

18   then uses the position of being a teacher to see her

19   socially, outside of school.  The touches continue.

20          This is a few years after the first case that

21   you have the PSI in front of you that he's already been

22   sentenced for.  What he was doing, he was preparing his next

23   victim slowly and carefully, just as he'd done in the first

24   case, to build up where he could do more things to her.

25          Mr. Friedman said that none of this was sexual

15da

1  in nature.  True, he never grabbed her vaginal area, he never

2  grabbed her breasts,  There is no question that every bit of

3  this was sexual in nature.  There is no other reason for it.

4  And we're not talking about a choir boy that nobody knows

5  he's ever done anything before.  You know what he did before

6  with the other girl.  He was a teacher.  Those people are

7  supposed to be able to trust that they can send their child

8  to school.  You are supposed to be able to trust that she

9  could go to school and not be fondled, not be touched in any

10  inappropriate manner, not had letters sent to her, repeated

11  letters, notes.

12          Mr. Friedman also said -- I'm sorry, Mr.

13  Yarbenet also said that he didn't put her through a

14  preliminary hearing.  That's true, he did not.  Several

15  charges were dropped in exchange for that.  In addition, he

16  did put her through a civil hearing.  So basically he had

17  already a transcript of everything this little girl was going

18  to say because she testified full at a school board hearing

19  to fire Mr. Yarbenet.

20          If the court wishes to sentence him

21  concurrently, there is obviously nothing I can do.  I would

22  strenuously object to that.  He didn't have one victim; he

23  didn't do it one time.  We're not talking about him doing to

24  two victims at the exact same time.  Years difference in

25  time.

153a

1           I understand Mr. Friedman's concern that he may
2    never leave jail.  Quite frankly, I don't think the
3    Commonwealth cares whether he ever leaves jail.  He needs to
4    be kept away from kids.  And the only way that this court or
5    anybody else can guarantee that he never touches another kid
6    is to keep him away from children.
7           I know the court doesn't have the same amount
8    of time to work with that we had on the first case, but to
9    discount her and say that what he did to her isn't worth an
10   additional sentence is wrong.  I do have those impact
11   statements.  I apologize.  I thought the court had them.
12           THE COURT:  Has counsel had a chance to see
13   these?
14           MR. FRIEDMAN:  No, I have not.
15           THE COURT:  Why don't you take a look at them,
16   counsel?  The court now will review those.
17           (Court reviews documents.)
18           THE COURT:  May I see the criminal informations
19   also?
20           (Documents handed to the court.)
21           THE COURT:  The court has had the opportunity
22   to consider a number of things here.  I had an opportunity to
23   review the presentence investigative report which was
24   prepared relative to case 1434 of 2002.  That is the case
25   under which he is serving his current I believe 11-to-22-

154a

1  year sentence.  I am going to make that a part of the record.

2  I have also had a chance to consider the victim -- letters

3  that were sent relative to this case.  There were three of

4  them.  I am making those a part of the record.  I have also

5  considered review of the criminal information in this case.

6  I have also considered the Pennsylvania Sentencing Guidelines

7  as they apply, and I have also considered the Pennsylvania

8  Sentencing Code and all of its factors.  Furthermore, I have

9  considered the statements made to me by defense counsel,

10  counsel for the Commonwealth, the defendant and also the

11  victim's father.

12           I know there was a very lengthy proceeding that

13  preceded this case in front of Judge Bozza.  I read some of

14  his comments in the newspaper, and I think the comments were

15  appropriate insofar as Judge Bozza I think accurately

16  indicated at that time that Mr. Yarbenet was in a position of

17  trust with the young victim that is now before me as well as

18  the other victim.

19           Focusing on this case, as the father of the

20  victim indicated and reiterated, as Commonwealth's counsel

21  indicated, when we place our children in the hands of people

22  like Mr. Yarbenet, who was for all intents and purposes a

23  very gifted teacher, we do so trusting that they will not be

24  manipulated or abused for one's self-interest, and that's

25  what he did here.  So it is one of the most serious crimes

155a

1  the court faces.  On the other side, the court is aware that

2  the defendant has some psychiatric problems.  Those are

3  reflected in the presentence investigative report with

4  respect to the other case, and I also know he's under a very

5  lengthy sentence at this time.

6           Yes, given the political climate in

7  Pennsylvania, it is highly doubtful as we sit here today that

8  he'll be released at the end of the 11 years.  What's going

9  to happen beyond now and then, who knows, but that is the

10  current political climate.

11           I think to some extent he must be given some

12  credit for entering a plea in this case.  Counsel's right,

13  the young girl did have to testify at an administrative

14  hearing, but he has come in, he's admitted his guilt, and

15  there will be no criminal trial where this young girl will

16  have to go up and face 12 jurors, 12 more strangers and tell

17  her tale.

18           The impact on her has been severe.  It's

19  indicated in the letters, and it will probably take years of

20  counseling for her to put this all in perspective and allow

21  her to form healthy relationships with men.  One of the

22  problems with this case, Mr. Yarbenet, is that when you

23  commit these offenses, it robs these children of their youth

24  to some degree.

25           Therefore, having considered all those factors,

156a

1   it is the sentence of the court as follows:  And the court's

2   going to try to strike a balance here with all these factors.

3   Start with count one, corruption of minors, the defendant

4   will pay the costs of prosecution and will be sentenced to

5   serve a period of confinement in the appropriate state

6   institution, the minimum of which will be six months, the

7   maximum of which will be 18 months.  That sentence will be

8   served consecutively to count 13 of the docket number he was

9   sentenced on before Judge Bozza, and that's 1434 of 2002.

10  The court would note that he is to receive any counseling

11  deemed appropriate for him, and that should include sex

12  offender counseling.

13              Turning to count two, corruption of minors, the

14  defendant will pay the costs of prosecution, be sentenced to

15  serve a period of confinement, the minimum of which will be

16  six months, the maximum of which will be 18 months.  And that

17  will be served concurrently with the sentence imposed at

18  count one.

19              Turning to indecent assault, the defendant will

20  be sentenced to serve a period of confinement, the minimum of

21  which will be three months, the maximum of which will be 18

22  months.  That too will be served concurrently with the

23  sentence imposed at count one.

24              Turning to the indecent assault charge on count

25  four, the defendant will pay the costs of prosecution, be

157a

1  sentenced to serve a period of confinement, the minimum of

2  which will be three months, the maximum of which will be 18

3  months.  And that will also be served concurrently with count

4  one.

5            Mr. Yarbenet, I probably would have given you

6  more time under the circumstances, but, to be quite frank

7  with you, you are going to be spending probably the majority

8  of your life in prison as it is.  I think some consecutive

9  time was appropriate because we have a separate victim,

10 separate wrong, but I think this is probably the most

11 appropriate sentence that I can fashion given all the

12 circumstances.

13            Is there anything further to come to the courts

14 attention?

15            MR. HOPKINS:  No, Your Honor.

16            MR. FRIEDMAN:  Nothing further, Your Honor.

17            GREGORY YARBENET:  Your Honor, thank you.

18            (Hearing concluded at 9:14 a.m.)

19

20

21

22

23

24

25

.1580

C E R T I F I C A T E

    I hereby certify that the proceedings and evidence are contained fully and accurately in the notes taken by me on the hearing Of the above cause, and that this copy is a correct transcript of the same.


_____
Jeanne M. Sykes
Official Court Reporter




    The foregoing record of the proceedings upon the hearing of the above cause is hereby approved, and directed to be filed.



_____
Hon. Ernest J. DiSantis, Jr.

159a

DEPOSITION
EXHIBIT
BLUCAS
NO. 1



# GIRARD SCHOOL DISTRICT

| DISTRICT ADMINISTRATION AND BUSINESS OFFICES | ELK VALLEY ELEMENTARY SCHOOL | RICE AVENUE MIDDLE SCHOOL | GIRARD HIGH SCHOOL |
|---|---|---|---|
| 1100 Rice Avenue Girard, PA 16417 Phone: 814-774-5666 Fax: 814-774-4220 | 2556 Maple Avenue Lake City, PA 16423 Phone: 814-774-5602 Fax: 814-774-8885 | 1100 Rice Avenue Girard, PA 16417 Phone: 814-774-5604 Fax: 814-774-5259 | 1135 Lake Street Girard, PA 16417 Phone: 814-774-5607 Fax: 814-774-4530 |

Press Release -Monday, April 8, 2002

<u>NEWS RELEASE</u>  (For immediate distribution)

THE GIRARD SCHOOL DISTRICT WAS SURPRISED, SHOCKED, STUNNED, AND SADDENED BY RECENT IMFORMATION CONTAINING ALLEGATIONS OF IMPROPER CONDUCT BETWEEN A POPULAR AND EXEMPLARY 32-YEAR VETERAN SCIENCE TEACHER AND HIS STUDENTS THAT OCCURRED IN PREVIOUS YEARS.  THE DISTRICT EXPRESSES ITS COMPASSION AND REGRETS WITH GREAT CONCERN TO STUDENTS, FAMILY, FRIENDS, AND STAFF AFFECTED BY THESE UNFORTUNATE AND TOTALLY INAPPROPRIATE EVENTS.

SCHOOL DISTRICT OFFICIALS HAVE AND WILL CONTINUE TO FULLY COOPERATE WITH ALL LOCAL AND STATE AUTHORITIES CONDUCTING THIS INVESTIGATION.

LATE WEDNESDAY EVENING, MARCH 27, 2002, SCHOOL OFFICIALS RECEIVED NOTIFICATION OF THE PARENTAL COMPLAINT AND PRELIMINIARY BUT SUBSTANTIAL REPORTS FROM POLICE INVESTIGATIONS.  BASED ON THIS INFORMATION AND AN ADMINISTRATIVE CONFERENCE WITH THE TEACHER EARLY THURSDAY MORNING OF MARCH 28, 2002, THE SCHOOL DISTRICT

160a

SUPERINTENDENT ISSUED AN IMMEDIATE INDEFINITE SUSPENSION FOR TEACHER GREG YARBENET OF THE RICE AVENUE MIDDLE SCHOOL.

GIRARD SCHOOL DISTRICT OFFICIALS WILL CONTINUE TO MONITOR ALL LEGAL IMPLICATIONS AND TAKE APPROPRIATE DISCIPLINARY ACTIONS IN CONSULTATION WITH THEIR SCHOOL SOLICITOR AND LABOR COUNSEL.

RESPECTFULLY SUBMITTED,

WALTER J. BLUCAS

SUPERINTENDENT

16a

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S. et al.                          )
                                         )
            Plaintiffs,                  )
                                         )
      vs.                                )        C.A. No.  04-150E
                                         )
GIRARD SCHOOL DISTRICT, et al.           )        Hon. Sean J. McLaughlin
                                         )
            Defendants.                  )        JURY TRIAL DEMANDED

AFFIDAVIT OF STACY S█████

Stacy S████, being duly sworn, deposes and states as follows:

1.      I am an adult individual who is a plaintiff in the within action.

2.      During the 1998-99 school year I was in the seventh grade at Rice Avenue
Middle School, Girard, Pennsylvania.

3.      In the late spring of the 1998-99 school year, I received my copy of the
school yearbook. Teachers and students at the school wrote notes in my yearbook.

4.      Attached to this affidavit as "Exhibit 1" are photocopies of pages from my
1998-99 yearbook. I have not altered the writing on those pages in any way.

5.      Several students made reference in my yearbook to Gregory Yarbenet.
Those references are indicated on "Exhibit 1" by means of numbered arrows. The



following notes are my recollection of the identity and circumstances relative to the handwritten messages:

(1)   "Stacy / Have a good summer. Say hi to Yarb over the summer for me.

LOL, M⬛ T⬛"

MY RECOLLECTION: M⬛⬛T⬛ was in some classes, but he wasn't really a friend.

(2)   "Stacey, You are an awesome friend! Thanks for being there for me! Call 774-3298 / ha ha ha ha / I'm honey and your not. A⬛"

MY RECOLLECTION: A⬛ B⬛ had suggested that I tell Liz Yarbenet that Greg loved me more, and this note was to tell me what I should tell Mrs. Yarbenet.

(3)   "Have a great summer Mrs Yarb / P⬛ H⬛"

MY RECOLLECTION: P⬛ H⬛ was in some of my classes, but he was never a friend. I don't know why he wrote in my yearbook.

(4)   "Stacey! Hey, have fun this summer & tell Yarb thanks you know what for (quiz) / [heart shape] ya, K⬛"

MY RECOLLECTION: Yarbenet gave K⬛M⬛ quiz answers and told her that he did it because she was "Stacy's friend."

(5)   "V⬛ K⬛ - I hope you have fun with Yarb this summer."

(6)   "Dump Yarb! Z⬛" - Z⬛ C⬛

(7)   "Stacey / It's been so great having you in the TV Studio. Take care of Yarb & don't let him tease you too much. Try to put up with Mrs. Werling. [heart shape], J⬛ S⬛"



Date: _August 3, 2005_____     _____
                                        Stacy S█████

Sworn and Subscribed to
before me, this the _3 rd_
day of _August_____, 2005.

_Joann Matoka_____
Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joann Matoka, Notary Public
Shaler Twp., Allegheny County
My Commission Expires Feb. 2, 2008
Member, Pennsylvania Association Of Notaries

164a

EXHIBIT 1

T65a

"Have a great summer"

Stacy Have a great summer
J

Stacy-
hope you
have
an awesome
Summer—
J

Stacey,
Have fun.
♥—ya
J

Stacy,
Have fun over the summer.
13

Stacy
Have a good summer. Stacy,
say hi to yrb over have a great summer
the summer for me.
Lol
M

Have
Fun in the
Sun and....
B
J

Stacy
I hope you
have a good
summer. you
will make it
through this
HAVE A GOOD SUMMER

Have a fun
summer vacatie

Stacey,
you are an
awesome
friend! Thanks
for being
there for the
cell
hahaha! o
I'm hornier and
your not

Have a great summer
mrs yarb

Stacey,
even though I don't
know you that well
you are a good person,
w/ a great heart. Have
fun this summer and
next year, enjoy RAMS.
and some of the
awesome teachers in
while you can.

Stacy,
Have an awesome
summer,

Next year
will be even
better then
this one
so have fun!
B

Stacey-
Have a Great
Summer♥ Hope we
become better friends
nexted year♥

Sup dude!

Stacy,
Have a
great
summer

166a



Stacey!
Hey, have fun
this summer &
tell Barb thanks
you know what for (quiz)

Stacey!
have fun
B

Hey Stacey!,
Have a great
summer. Your
real good at
being in a newscast
person. K

Stay Groovy
And remember anyone
who doesn't have BIG IQ
should be Killed!

Stacey-stay
cool and I'm
glad we were
friends!
D

♡ya,
K

Stacy,
have fun
this summer
& stay out
of trouble
call me!
f

Stacey.
have a great summer
your cool, B

167a

Stacy
I wont see you
next year, so sit
w/ me on the bus
so we can talk

I hope you
have fun with Yarb
this summer.

Dump Yorb!

Stac[y] the bes[t]
your the [...]
[...] around

HAVE A GREAT
SUMMER.

5

6

Stacey,
Have a great
Summer. [...]

To Stacy-
Good Luck
Next Year!

Stacey,
Have a wonderful
summer. I'm sorry I am
we didn't get the chance
to be close friends.
call me sometime

I am
purple!
Good luck
next
year! you rule!

Hey have a
good summer

Stacy,
Hey girl you
are the
coolest, stay
that way.
we'll have a
great
summer!

Have a
E[...],

Have a nice
summer

HA Stacy
UR So Like Cool!.

MAD SKILLS

Cya,

(phone me.)

7

168a

Stacey,
it's bed
so great having
you in the TV
studio. Take care
of Yarb & dont let
him tease you too
much. Try to put
up w/ Mrs. Werling.

Stacy,
Have fun
this summer!

R[...]    G.
I'm crazy
[...]

### AFFIDAVIT OF E██████ G█████

1.    My name is E██████ G█████. I reside at ████████████ad, Cranesville, Pennsylvania 16410. I was born ████████████, 1986, and am eighteen years old. I will be attending Liberty College in Virginia in the fall.

2.    In the 1998-1999 school year I was in sixth grade at Rice Avenue Middle School in Girard.

3.    Sometime during that school year I heard a rumor that my English teacher, Mr. Verga, was looking at pornography on his computer in his classroom. Many times when students entered his room, he would put an assignment on the board that we were to work on in class, and he would be on the computer while we worked. His desk was next to the pencil sharpener, and if we needed to sharpen our pencils, it was impossible not to see what he was looking at.

4.    One day another student and I saw him looking at pictures of naked women. We went to the guidance counselor's office and left a note in her box that she called the "safe zone," where students could leave a message about something confidential. We told her in the note that we saw naked women on Mr. Verga's computer.

5.    The guidance counselor, Mrs. De Marco, called us to her office. She said she had talked to Mr. Snyder about it. She said it was probably just artwork and we shouldn't make a big deal out of it.

6.    Then Mr. Snyder called us to his office several days later for a meeting with him and Mrs. De Marco. They said they had looked into it, and it was either artwork or Mr. Verga was testing the new computer security system. They said we needed not to make a big deal out of it. They made me feel stupid for saying anything.

169a



7.    Either at the first meeting with Mrs. De Marco or at the meeting with her and Mr. Snyder, she said we should keep this a secret and not tell anybody.

8.    I didn't tell anybody else about it until my friend, H███S█████ told her mother that I had been told not to tell, and her mother told my mother.

9.    During that same school year, I had Mr. Yarbenet for science. He didn't spend much time teaching. We watched a lot of movies and spent a lot of time talking.

10.    The girl Stacy, who brought this lawsuit, was a year older, in seventh grade. Every single day, or at least it seemed like every day, Stacy would come to science class. She would get a pass every day. Sometimes she would sit in his chair, and sometimes they would talk about plans for her to go to his house after school, and sometimes they would go together to the storeroom next to his classroom.

11.    Students were jealous of all the attention Mr. Yarbenet gave Stacy. People would gossip and laugh about their relationship while they were in the storeroom. My impression is that the whole school knew about them. If you said "Yarb's girlfriend," everybody knew who you meant.

12.    I saw them together a lot, not just in my science class, but also they would be in his room alone during class breaks, and I would see him giving her rides after school in his car. They were always very close, so close they touched, and he would be flirting with her.



170a

Date: 7/21/2005

Witness:

Carolyn Spicer Russ, Esquire
Pa. ID 36232

1007 Mount Royal Blvd.
Pittsburgh PA 15223

171a

**FORM OF ACKNOWLEDGMENT BY
AN ATTORNEY AT LAW**

Commonwealth of Pennsylvania

County of _Allegheny_

On this, the 21st day of _July_____, 2005, before me
_Joann Matoka_, the undersigned officer, personally appeared
_Carolyn Spicer Russ_____, known to me (or satisfactorily proven)
to be a member of the bar of the highest court of said state,
Supreme Court ID Number _36232_____, and a subscribing witness
to the within instrument, and certified that she was personally
present when E_____ G_____, whose name is subscribed to the
within instrument executed the same; and that said person
acknowledged that he executed the same for the purposes therein
contained.

   In witness whereof, I hereunto set my hand and official seal.

_Joann Matoka_____
                Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joann Matoka, Notary Public
Shaler Twp., Allegheny County
My Commission Expires Feb. 2, 2008
Member, Pennsylvania Association Of Notaries

172a

STATEMENT OF P██████ H████████

1.    I reside at 11115 Cross Station Road, Girard, Pennsylvania. I am a student at Penn State-Williamsport.

2.    In 1998-99 I was a seventh grader at Rice Avenue Middle School.

2.    I was in the same grade as Stacy S███████

3.    I knew who Stacy was, but she and I weren't friends.

4.    I wrote a note in her 1998-99 yearbook (a copy of my note is attached), "Have a great summer Mrs. Yarb." I don't remember why I wrote that. I have a vague memory that she hung out with Mr. Yarbenet all the time.

Date: 7/5/05                              _____
                                         P█████ H████████

173a

"Have a great summer"

Stacy-
hope you
have
an awesome
Summer—

Stacy
Have a great
summer

Stacey,
Have fun.
♥-ya

Stacy
I Have fun over the summer

Stacy
Have a good summer. Stacy,
say hi to yard over
the summer for me.
LOL

Stacy,
have a great summer

Have
Fun in the
Sun and....B

Stacy
I hope you
have a good
summer. I
will make it
through this.

Have a fun
summer vacation
B

Stacy,
HAVE A GOOD    SUMMER

Stacey,
you are an
awesome
friend. Thanks
for being
there for me!
Cell 774-3298
hahahaha
I'm homey and
your not.

Have a great summer

mrs yarb

Stacey,
even though I don't
know you that well
you are a good person
w/ a great heart. Have
fun this summer and
next year. Enjoy RAMS
and some of the
awesome teachers in
while you can.

stacy
Have an awesome
summer.

Stacey-
Have a Great
Summer♥ Hope we
become better friends
nexted year♥

SUP dude!?

179a

Stacy,
Have
a
Stacy
Summer

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY S. et al. | ) | Civil Action No. 04-150E |
| | ) | |
| Plaintiffs, | ) | HON. SEAN J. McLAUGHLIN |
| | ) | |
| v. | ) | |
| | ) | |
| GIRARD SCHOOL DISTRICT et al. | ) | |
| | ) | |
| Defendants. | ) | |

## <u>AFFIDAVIT OF L██ S█████</u>

L██ S█████, being duly sworn, deposes and states as follows:

1.     I live at ██████████████, Girard, Pennsylvania 16410.

2.     Stacy was one grade ahead of me when I was a student at Rice Avenue Middle School.

3.     Mr. Yarbenet was my sixth grade science teacher. I kept my distance from him. I was really shy and thought he was too friendly. Other students called him "Yarbie" and hung out in his room at lunch and were always around him. Mostly it was girls who hung around him, but some boys were there as well because that's where the girls were, particularly the popular girls.

4.     In seventh grade, I had Mrs. Werling for enrichment class. The seventh and eighth grade gifted students were together in one class, so Stacy was in my class. There were about ten kids in the class total. Mrs. Werling did not have a classroom, so


175a

the enrichment class met in the science lab, two rooms away from Mr. Yarbenet's classroom.

5.      Sometimes Mr. Yarbenet would come to the lab when we were having our enrichment class and say, "Mrs. Werling, can I see Stacy?" She would say sure. He and Stacy would be gone for a long time.

6.      Sometimes students from the enrichment class went to Mr. Yarbenet's classroom to read, because he didn't have a class then. I saw Mr. Yarbenet take Stacy into the storage room several times.

7.      When I was a student at Rice Avenue Middle School, there was a lot of talk about the relationship between Stacy and Mr. Yarbenet, not so much in the enrichment class, but many of the other seventh and eighth graders thought that they were having some kind of love affair.

8.      My recollection is that Mr. Yarbenet took Stacy out of the enrichment class at least once a week.

9.      My impression was that students thought badly of Stacy because of her relationship with Mr. Yarbenet. I do not recall students being concerned for her safety. She was shy and withdrawn and did not have a lot of friends. It didn't seem the other students cared about her, they just wanted to talk about her and what she might be doing with Mr. Yarbenet.

176a

Date: 6/25/05

Sworn to and subscribed
before me this 25th day
of June , 2005.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Joan ... ... tary Public
Shaler Twp., ... gheny County
My Commission Expires Feb. 2, 2008
Member, Pennsylvania Association Of Notaries

177a

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S.; and JOHN and MARY           )
ELLEN S., on behalf of their          )    Civil Action No. 04-150E
daughter, LEIGH ANN S., a minor       )
                                      )
            Plaintiff,                )    Jury Trial Demanded
                                      )
        v.                            )
                                      )
GIRARD SCHOOL DISTRICT;               )
ROBERT SNYDER, Individually           )
and in his capacity as                )
Principal of the Rice Avenue          )
Middle School; and GREGORY            )
YARBENET, a professional              )
employee of the Girard School         )
District,                             )
                                      )
            Defendants.               )

## AFFIDAVIT OF KAREN KWIATKOWSKI

Karen Kwiatkowski, being duly sworn, deposes and states and
follows:

1.   I am an adult individual.   I reside at 9153 Ferndale
Court, Girard, Pennsylvania 16417.

2.   From 1978 until June 2004, I was employed by the Girard
School District.   I was a teacher aide in the Rice Avenue Middle
School from 1981 until my retirement in 2004.

3.   Among my duties I was a hall monitor before homeroom each
morning.



4.  In 1998-1999 I was also assigned to monitor the homeroom of teacher Gregory Yarbenet during the homeroom period at the beginning of the school day.

5.  From approximately 1995 until 2003, my supervisor was principal Robert Snyder.  In his absence I reported to assistant principals Mike Hahesy and Greg McClelland.

6.  Gregory Yarbenet was a teacher at the Rice Avenue Middle School the entire time that I worked at the school.

7.  At some point, I became aware of behavior of Mr. Yarbenet that disturbed me.  For a period of at least ten years I observed him behaving with female students in a way that I thought was inappropriate.

8.  Many times over the course of at least the last ten years, I would find he was in his classroom with the lights out and the door locked.  When I would let myself into his classroom, I would often find him in there with female students.  Among the students I found in his room were Stacy and Leigh Ann.

9.  It was Mr. Yarbenet's practice to keep dark paper over the lower half window of his classroom door.

179a

10.   At one point, I observed Mr. Yarbenet in the hallway
with a group of students.   He had his arm around Leigh Ann's
shoulders and kissed her on the head in front of the other
students.

11.   I reported all of Mr. Yarbenet's behaviors to the
principal and assistant principals many times over a several-year
period.  I reported that I was finding him in his classroom with
female students with the lights out and the door locked.   I
reported that I observed him with his arm around Leigh Ann and
kissing her.  I reported that he was giving female students rides
in the elevator.   I reported former students were leaving the
lunchroom to eat in his room.  The response from Mr. Snyder, Mr.
Hahesy, and Mr. McClelland was always, "I'll take care of it" or
"I'll get right on it."

12.  I observed that the situation did not change as a result
of my reporting to the administrators.

13.  Mr. Snyder and I together frequently observed Mr.
Yarbenet leaving school with Stacy and walking with her to her
destination.   I said many times, "There goes Yarbenet with his
girlfriend."



14.   One day I went to Mr. Yarbenet's classroom when he was teaching sixth graders and I observed that his room was entirely ringed by seventh and eighth grade girls out of study halls and lunch.

15.   Mr. Yarbenet's behavior with girls was observed by teachers and was discussed with concern.  Among the people who expressed their concern in front of me were Linda Tucci, Robin Seneta, Sara Chuzie, Debbie Karwoski, and Mary Werling.

16.   I also observed Mr. Yarbenet giving a particularly well endowed female student, who was in the sixth grade at the time, the once over.  His eyes traveling up and down her body.  I reported even this to Mr. Snyder.


Date: ___10/25/04___

_Karen Kwiatkowski_
Karen Kwiatkowski


Sworn to and subscribed
before me this __25__ day
of ____Oct____, 2004.

_Paul Manzi_
Notary Public

PAUL MANZI
DISTRICT JUSTICE 06-2-02
3636 WEST 26TH STREET
ERIE, PENNSYLVANIA 16506
MY COMMISSION EXPIRES 1/3/06

4



IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S.; and JOHN and MARY )
ELLEN S., on behalf of their )    Civil Action No. 04-150E
daughter, LEIGH ANN S., a minor )
                                )
          Plaintiff,            )    Jury Trial Demanded
                                )
     v.                         )
                                )
GIRARD SCHOOL DISTRICT;         )
ROBERT SNYDER, Individually     )
and in his capacity as          )
Principal of the Rice Avenue    )
Middle School; and GREGORY      )
YARBENET, a professional        )
employee of the Girard School   )
District,                       )
          Defendants.           )

## AFFIDAVIT OF GREG SENYO

Greg Senyo, being duly sworn, deposes and states and follows:


1.  I am an adult individual.  I reside at RR #1, Box 1757,

Russell, PA 16347.  I was the building manager for the Girard

School District from July 1996 to September 2003.  As supervisor of

the Girard School District maintenance crew, I supervised custodial

and maintenance staff in their activities at the Rice Avenue Middle

School.


2.  One of my responsibilities was insuring that the School

District grounds, equipment, and activities complied with local,

state, and national safety rules.  The School District buildings

were regulated by various bodies, and from time-to-time, the Erie

County Health Department would inspect the building.



3.   Because of my job duties, which included insuring the building's compliance with safety rules, I had several encounters with the Defendant, Gregory Yarbenet.   These encounters occurred because Yarbenet persistently darkened a storage room next to his classroom.

4.   Erie Health Department rules provided that rooms had to have a certain luminosity in order to comply with Health Department standards.

5.   There was a small work room next to Gregory Yarbenet's classroom shared with Robin Seneta, Room 211.

6.   That room was subject to the Health Department regulation regarding lighting.   The room separated Yarbenet's classroom, Room 209, from the classroom of the other science teacher, Room 211.

7.   The custodial workers who reported to me repeatedly found that the flourescent lights did not work in the storage room next to Yarbenet's classroom.   When they would get out a stepladder to fix the lights, they would find that the lights had not burned out, or in any other way malfunctioned, but that the lights had been unscrewed.

2

183a

8.  I spoke with Yarbenet about this.  He admitted he  was the person who unscrewed the lights.  By unscrewing the lights, he made it impossible to turn on the lights as one entered the room.

9.  The effect of what Yarbenet did was to prevent someone who entered the room to turn on the lights.  It was not a matter of turning off the light.  It was a matter of any authorized person being able to turn on the lights at all.

10.  The effect of Yarbenet's unscrewing the light caused the room to be totally dark, and caused it to be impossible to turn on the lights in the room.

11.  The custodial workers reported that Yarbenet had repeatedly unscrewed the flourescent light bulbs in the room to keep it dark.  This caused the room to be in violation of Heath Department regulations.

12.  I brought this matter to the attention of Assistant Principal Greg McClelland on several occasions.  Each time my reports encountered the room with the lights unscrewed, they would screw in the lights.

3

13.  On at least one occasion, I reported the matter to Principal Robert Snyder, as well.

14.  When I made my reports to the administrators, they just ignored me.  I pointed out the safety violations and they did not care.


Date: _9-9-04_

_Greg Senyo_

Sworn to and subscribed
before me this __9TH__ day
of _SEPTEMBER_, 2004.

_Robert A. Wilson_
Notary Public

```
          Notarial Seal
   Robert A. Wilson, Notary Public
   Conewango Twp., Warren County
 My Commission Expires Mar. 7, 2005
 Member, Pennsylvania Association of Notaries
```

4

185a

AFFIDAVIT OF C█████████ N████

C███████ N███, being duly sworn, deposes and states as follows:

1.     My name is C███████ N███. I am 16 years old. I live at 10076 Eagle St., Lake City, PA 16423.

2.     I attend Girard High School. When I was in sixth grade in 1999-2000, I attended Rice Avenue Middle School. My science teacher was Gregory Yarbenet.

3.     Leigh Ann S█████████ was in the same grade as me, but she was not in my science class. She wasn't really my friend then. We only became friends later.

4.     A lot of students, including me, would go to Mr. Yarbenet's room before homeroom in the morning. Students were allowed into the school at 7:25. When I went to Mr. Yarbenet's room, Leigh Ann would usually already be there, along with Mr. Yarbenet's son Sean.

5.     During that sixth-grade school year it became obvious that Leigh Ann was Mr. Yarbenet's favorite. When the girls would go to Yarbenet's classroom before school, if Leigh Ann wasn't there, Yarbenet would ask where she was. He would talk to us, but as soon as Leigh Ann came in he would ignore us and only talk to Leigh Ann.

6.     Students also went to Yarbenet's classroom instead of going to lunch. The only boy I ever saw there was Leigh Ann's boyfriend, J█████ Yarbenet would give us all passes to come to his room at lunchtime.

7.     I always saw Yarbenet hug girls. He would put his arm on boys, but hug the girls.

186a

8.     A█: A████ was my friend. When I was at her house, she would be on-line with Mr. Yarbenet, and he would give A███ and me answers to the next day's quiz.

9.     We were supposed to have a pass if we wanted to leave one room to go to another, but sometimes the teachers would just take our word that we needed to go somewhere else. We would make up a reason, like we had to go make up a test, or we had to go to the bathroom, and then we would go to Yarbenet's classroom. If he was teaching, we would sit in the back of the room.

Aug. 10, 2005
Date


C███████ N████ ███████

187a

Commonwealth of Pennsylvania          )
                                      )
County of _Erie_____              )

     Before me, the undersigned authority, personally appeared C██████ N███ who,

being duly sworn according to law, verifies that the statements and averments made in

the foregoing Affidavit are true and correct to the best of her knowledge, information and

belief.



Sworn to and subscribed

before me this _10th_ day of

_August_, 2005.

_____
Notary Public

NOTARIAL SEAL
BRANDY L. LITTLE, NOTARY PUBLIC
GREENVILLE BORO., MERCER COUNTY
MY COMMISSION EXPIRES SEPT. 5, 2005

188a