IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| STACY S.; and JOHN and MARY ELLEN S., on behalf of their daughter, LEIGH ANN S., a minor | ) ) ) | Civil Action No. 04-150E |
| | ) | |
| Plaintiff, | ) | Jury Trial Demanded |
| | ) | |
| v. | ) | |
| | ) | |
| GIRARD SCHOOL DISTRICT; ROBERT SNYDER, Individually and in his capacity as Principal of the Rice Avenue Middle School; and GREGORY YARBENET, a professional employee of the Girard School District, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**<u>AMENDED COMPLAINT</u>**

**<u>Jurisdiction</u>**

1.   Plaintiffs invoke 42 U.S.C. §1983 as the source of their federal claims, since it protects them from deprivation of rights guaranteed them by the substantive due process protections of the Fourteenth Amendment and the right to personal integrity and safety guaranteed by the Fourth and Fifth Amendments.  This court has jurisdiction over Plaintiffs' claims by virtue of 28 U.S.C. §1331.  Plaintiffs also ask this court to assume jurisdiction of their state law claims under 28 U.S.C. §1367.

**Parties**

2.    S.A.S. is an adult individual.  Her date of birth is ████,
1985.   The other Plaintiffs are John D. and Mary Ellen S. on
behalf of their daughter L.A.S.   The birth date of L.A.S. is
████, 1988.

3. Defendant Gregory Yarbenet was a professional employee of the
Girard School District who taught science to sixth graders at
Rice Avenue Middle School.   Yarbenet was employed by the School
District for over 20 years.

4.   Defendant Robert Snyder was the Principal of Rice Avenue
Middle School (hereafter "RAMS").   At all times relevant to this
matter,   Snyder was a policymaker for the School District with
respect to the matters raised in this Complaint.

5.   The Girard School District is a governmental entity providing
free   public   education   to   the   students   in   the   Girard,
Pennsylvania, area.

6. At all times relevant, Defendants acted under color of state
law.

2

## Statement of the Facts

### Background

7.   The Girard School District maintained a custom, policy or long-standing practice of being deliberately indifferent to faculty sexual misconduct.  In this case, the School District and Snyder ignored explicit warnings and patent signs of Yarbenet's sexual misconduct directed at plaintiffs.  In fact, Snyder and the School District facilitated and ultimately abetted Yarbenet's conduct.

8. In the course of performing his duties as a teacher at RAMS, Yarbenet molested female middle school students in his classroom, in an adjacent storage area, and in the school's TV studio. Yarbenet obscured the behavior in his classroom by covering the glass portion of the door with black construction paper so that his interactions with girl students could not be observed from the hallway.  Oftentimes, Yarbenet would turn off the lights in his classroom while he was in there alone with a young girl. This secrecy was designed to allow him to molest young girls sexually during the school day.  Over the years Yarbenet enticed female students to be alone with him in his classroom during the

3

school day. Once alone, he would subject them to his sexual misconduct.

9.  The faculty sexual misconduct which injured the Plaintiffs does not involve isolated incidents, but a pattern of daily abuse which occurred in the morning before school, throughout the school day, and after school.  Yarbenet's sexual misconduct directed at the plaintiffs persisted over the course of four school years, since Yarbenet started abusing S.A.S. in February 1999, when she was in 7th grade and continued to abuse her throughout her 8th grade school year.  S.A.S. left the middle school in June of 2000. Yarbenet began abusing L.A.S. in the fall of 2000 during the first semester of her 6th grade year and continued abusing her while she was a 7th grader, until S.A.S. disclosed the sexual misconduct in March of 2002.

10.  Yarbenet eventually pled guilty to one count of deviate sexual intercourse, several counts of indecent sexual assault and several counts involving the corruption of a minor. He is currently serving a prison sentence of 11 ½ to 22 years at the state correctional facility in Greensburg, Pennsylvania.

11.    The  School  District  official  who  had  the  authority  and
responsibility  to  stop  such  contact  was  the  Rice  Middle  School
Principal,  Robert  Snyder.    Snyder  was  the  day-to-day  leader  of
the  school.    He  had  authority  over  teachers  and  students  and  was

responsible  for  ensuring  that  young,  female  students  would  not  be
molested  by  teachers.    Snyder  simply  ignored  this  responsibility.

12.    Each  of  the  Plaintiffs  was  victimized  by  Yarbenet  for  a
prolonged  period  of  time.    The  victimization  occurred  every
single  day  that  Defendant  Yarbenet  and  S.A.S.  or  L.A.S.  were
present  and  involved  what  was,  in  essence,  sexual  assault.

13.  Snyder  had  actual  knowledge  of  a  substantial  risk  of  harm  to
the  health  and  safety  of  female  students.    Snyder,  in  spite  of
having  such  knowledge,  failed  to  take  steps  to  stop  the  conduct.

14.  Worse,  Snyder  not  only  ignored  the  obvious  implications  of
Yarbenet's  actions,  he  actually  deflected  the  concern  of
individuals  who  reported  inappropriate  and  disturbing  conduct.
Snyder  adopted  and  published  a  false  explanation  for  Yarbenet's
conduct.  Thus,  Snyder  would  reassure  those  concerned  persons  who
reported  Yarbenet's  inappropriate  conduct  to  him  that  S.A.S.'s

parents were aware of Yarbenet's interest in S.A.S. and approved of their relationship.  However, Snyder never spoke to S.A.S.'s family about the reports of inappropriate or disturbing conduct, and never heard from them that they approved.  Snyder was spreading Yarbenet's chosen cover-up.  Snyder disregarded numerous warnings and obvious signs of Yarbenet's predatory conduct.  In short, Snyder failed to take even minimal steps to protect female students who fell prey to Yarbenet.

15.  Furthermore, it was the custom and practice of the School District to disregard clear signs of faculty sexual misconduct. Faculty members came upon Yarbenet alone with S.A.S. in inappropriate places such as his darkened classroom with the door closed or locked, or in the adjoining closet.  When a faculty member would come upon Yarbenet and S.A.S., Yarbenet would react in a highly defensive or startled manner.  When Yarbenet was discovered, alone, in the dark with female students, he became defensive and nervous, offering quick yet facile explanations for the inappropriate situation.  His conduct was overlooked.

16.  The failure to recognize and stop the high risk of harm to Yarbenet's students reflected a policy, practice, or custom of deliberate indifference.  No significant or useful training on

6

faculty sexual misconduct was provided to the faculty, staff or administration at RAMS. Yarbenet's behavior was widely known among students and observed by faculty members. However, an absence of training, coupled with a proclivity to recklessly overlook conduct which posed a risk of harm, was the norm.

17. It was also the norm for other faculty members to repeatedly release S.A.S. and L.A.S. from their scheduled classes so that the girls could, in essence, be served up to Yarbenet. Yarbenet was provided with numerous occasions during the school day to be alone with young girls, including the Plaintiffs, in the seclusion of his classroom and a storage room adjacent to his classroom, where he would molest them.

18. Snyder's failure to investigate complaints of concerned third parties coupled with his complicity in spreading Yarbenet's cover-up for his behavior allowed Yarbenet the opportunity to inflict his perverse sexual predations on the plaintiffs. There was no legitimate reason for Yarbenet to have daily contact during class time, first with S.A.S. and then with L.A.S. Nevertheless, faculty members released S.A.S. and L.A.S. to be alone with Yarbenet on a daily basis. S.A.S. and L.A.S. were

discharged to Yarbenet's care in violation of middle school policy.

19.  The Plaintiffs were injured as a result of these policies and customs.  The School District completely abrogated its lawful obligations to offer a school environment free from sexual assault by its failure to take any steps, even after acquiring

actual knowledge of Yarbenet's strange and bizarre conduct, to arrest the behavior.

20.  As a result of Snyder's failure to take action, the Plaintiffs S.A.S. and L.A.S. were repeatedly, over a period of years, molested by Yarbenet.

### Statement of Facts Pertinent to the Claim of S.A.S.

21.   S.A.S. was born on ▮▮▮▮, 1985.  S.A.S. began attending Rice Avenue Middle School in 1996 as a fifth grader and had her first encounters with the Defendant, Gregory Yarbenet, in the 1997-1998 school year.  At the end of her sixth grade school year, Yarbenet began a pattern of sexual harassment that would culminate in the molestation which is the subject matter of this

Complaint.    The  conduct  began  with  verbal  teasing  with  an
underlying sexual innuendo.

22.  S.A.S. began seventh grade in 1998.  At the beginning of the
year, the Defendant Yarbenet enticed S.A.S. to join the TV studio
crew, which was operated as a school-sponsored audiovisual club.
Yarbenet  was  the  head  or  faculty  sponsor  of  the  club.    Yarbenet
would  thereafter  contrive  to  have  S.A.S.  come  to  his  room  for
apparently  club-related  business.    However,  on  those  occasions  he
molested her.

23.  By December of 1998, Yarbenet began to confide personal and
adult-content  material  to  S.A.S.    He  spoke  frequently  of  the
death  of  his  first  wife,  who  had  died  many  years  before,  as  a
ploy to gain S.A.S.'s sympathy.  He began giving S.A.S. presents
and showering attention on her.  During the Christmas break of
her seventh grade, Yarbenet called S.A.S. at least once a day at
her home.

24. In February of 1999, Yarbenet arranged for a field trip for
his audiovisual club.  On the return trip, he dropped off all of
the other student attendees before dropping off S.A.S.  Prior to
arriving at her house, he pulled his car to the side of the road

and began to kiss her.  Yarbenet also fondled her and hugged her in a sexually overt way on this occasion.  S.A.S. was only thirteen at the time.

25.  Thereafter, following this incident, Yarbenet began a series of almost daily sexual encounters with S.A.S.  These encounters took place over the next year and a half.  Many of the encounters occurred in the school, in the TV studio, in the science classroom, and in the back closet, where Yarbenet would often take S.A.S.  These encounters included all manner of touching, kissing, and fondling of S.A.S.

26. Yarbenet would turn off the lights to his classroom during the school day when he and S.A.S. were alone.  Black construction paper and various decals covering the glass portion of his door shielded his actions.  There were also occasions when Yarbenet would direct S.A.S. to repair to a closet off his class.  He would hold the door shut with his body on these occasions, making S.A.S. a prisoner.  Once thus secluded Yarbenet would bombard S.A.S. with sexual and emotional advances.  Yarbenet would also molest S.A.S. during class time, with other students only feet away, behind the high desk from where he taught.

27. In S.A.S.'s seventh and eighth grade years, she did not have Yarbenet for an academic subject.  However, by virtue of her involvement in the TV club, S.A.S. was assigned to Yarbenet's homeroom.  Yarbenet would release the other students from his homeroom early, so that he would have the opportunity to spend time with S.A.S. alone.  On these occasions, his other students would be roaming the hall and he would be molesting S.A.S.

28.  Yarbenet also encouraged S.A.S.'s teachers to release S.A.S. from their classes, so that he could take her to the privacy of his room.  The teachers routinely released S.A.S. to Yarbenet's custody and control.  On many occasions, Yarbenet would interrupt some other teacher's class so that he could retrieve S.A.S. and take her to his room.  There was no legitimate reason for the teachers to release S.A.S.  Yarbenet would use these occasions to molest S.A.S.

29.  Yarbenet was manipulating and abusing ostensible school procedures and policy concerning removing students from another teacher's class.  There was no legitimate purpose served, but Yarbenet nevertheless obtained custody and control of S.A.S. from other teachers and thereafter harmed S.A.S.  In fact, several

teachers allowed S.A.S. to leave their class with no academic or club purpose, but only because Mr. Yarbenet had asked them to do so.

30.    Yarbenet continued to molest S.A.S. on a daily basis, subjecting her to his kisses, touches, and hugs for almost two years.  There were also instances when Yarbenet would compel S.A.S. to touch his genital area and cause him to ejaculate in his classroom on school days.

31. During this time Yarbenet repeatedly warned S.A.S. that some harm would come to her in the event she disclosed his conduct to anyone.  He shared thoughts with her that caused her to be frightened of him.  Yarbenet repeatedly told S.A.S. that no one would believe her if she reported him, because he would deny her allegations and he also threatened to physically harm her if she disclosed what was happening to her.  He manipulated her emotional immaturity to make her an object of a perverse sexual relationship.

32. At the end of her eighth grade year, Yarbenet compelled S.A.S. to engage in oral sex on two occasions.  The first instance occurred when S.A.S. was fourteen years old.  The second

occurred days later, following her fifteenth birthday.  On both occasions, she became sick and left the room very upset.

33. Yarbenet pursued S.A.S. when she advanced to the high school the following year.  He secured the combination to her locker, and used other students to deliver messages to her.

**Statement of Facts Pertinent to the Claim of L.A.S.**

34.  L.A.S. had her first encounter with Yarbenet in January of 2000.  She came to the Girard School District as a sixth grader from a private school.  She was eleven years old at the time. L.A.S. was assigned to Yarbenet's science class and almost immediately became a target for Yarbenet.  He singled her out because of her vulnerability as a new student and began his typical pattern of showering her with attention.

35.  L.A.S. repeated sixth grade in 2000-01 in order to catch up with the public school curriculum.  She was again assigned to

Yarbenet's science classroom.    Beginning in December 2000, Yarbenet began a pattern of repeated inappropriate physical contact with L.A.S.  Yarbenet repeatedly touched and rubbed L.A.S.'s body in a sexual way.  He also entangled her in his own corrupt emotional life.

36.  The conduct involving L.A.S. occurred, as it had occurred with S.A.S., in Yarbenet's classroom and the TV studio. Oftentimes, the conduct occurred before the school day began, and it would persist throughout the day.  The conduct occurred on a daily basis.  Yarbenet manipulated L.A.S., as he had manipulated S.A.S., to become the victim of his sexual predations.    He molested her in his secluded room, darkened to conceal the affair.

37.  Yarbenet's conduct was so outrageous that he molested L.A.S. in front of her classmates.  Yarbenet would call L.A.S. to the front of the class, having her stand behind a high desk.  On such occasions, while other students were engaged in school work and involved in their studies, Yarbenet would begin to fondle L.A.S., in a sexual fashion.

38.  During the time period in question, Yarbenet engaged in numerous inappropriate conversations with L.A.S. and, on numerous occasions, touched her in a sexual manner.  Yarbenet intruded in L.A.S.'s personal life and took it upon himself to inquire whether she had a boyfriend and then shower her with gifts and flowers in a misguided competition with L.A.S.'s teenage boyfriend.

39.  Yarbenet also insinuated himself into the family life of L.A.S.  During the summer of 2001, he showed up uninvited at a family gathering and molested L.A.S. when they were swimming and her parents were on the beach.

40.  Yarbenet's conduct continued into the 2001-02 school year, when L.A.S. was assigned to his homeroom, and only ceased when, in April 2002, he was suspended from teaching.

### Causes of Action

### Count I

### 42 U.S.C. §1983, Substantive Due Process as Guaranteed by the Fourteenth Amendment to the United States Constitution

### S.A.S. and
### John and Mary Ellen, on behalf of their Daughter, L.A.S., vs Yarbenet, Snyder and the Girard School District

41.  At all times relevant, the Defendants acted under the color of state law.

42. While acting under color of state law, Yarbenet inflicted sexual touching and sexual harassment, and sexually molested the Plaintiffs.  This conduct violates rights secured to the Plaintiffs by the Substantive Due Process Clause of the Fourteenth Amendment, as well as the provisions of the Fourth, Fifth and Ninth Amendments to the Constitution.

43.  The Girard School District acquiesced to Yarbenet's conduct by maintaining a practice and custom of being deliberately indifferent to faculty sexual misconduct.  This policy allowed Yarbenet to take S.A.S. and L.A.S. out of other classes, and, in essence, provided him with an unlimited opportunity to molest S.A.S. and L.A.S. in his classroom.

44.  Furthermore, Snyder, the building's leader, ignored repeated objections and complaints by staff and members of the public that Yarbenet was engaging in inappropriate conduct with the Plaintiffs.  In fact, Snyder responded with false stories to those who had expressed concern for S.A.S. and L.A.S.'s welfare. Snyder actually facilitated the ongoing abuse by lying and

discouraging those individuals who reported their concern about Yarbenet's conduct.

45. Snyder and the School District completely ignored and were deliberately and recklessly indifferent to their duties under state law to report and stop acts of sexual assault.

46. If Snyder had not fabricated a story which constructively insulated Yarbenet from suspicion, then other staff or faculty would have been able to identify the pattern of sexual abuse. Additionally, Snyder's false excuses for Yarbenet's conduct gave Yarbenet confidence that he could continue assaulting the

Plaintiffs and not be held responsible, so he did just that until years later after two lives had been ruined.

47. Furthermore, prior reports of Yarbenet's sexual misconduct were also ignored. Hence, when a foster parent of a young girl who had been molested by Yarbenet attempted to report the sexual misconduct, the student was called a liar by the guidance counselor, Gayla DeMarco. Similarly, faculty members who would repeatedly find Yarbenet alone with S.A.S. in the storage closet or his darkened classroom would simply ignore the conduct, even

though they noticed that Yarbenet was startled and defensive as a result of their intrusion. This indifference was a product of the School District's custom and practice of ignoring faculty sexual misconduct.

48. The conduct of Snyder is therefore attributable to the Girard School District and Snyder since Snyder was the policy maker and day-to-day leader of the Rice Avenue Middle School.

49. The conduct of the Defendants involves severe, persistent, outrageous treatment of S.A.S. and L.A.S. and violates their rights to substantive due process and the liberty interest in not being compelled to engage in sexual activity.

### Count II

### 42 U.S.C. §1983, Due Process, Fourteenth Amendment, State-Created Danger

### S.A.S. and John and Mary Ellen, on behalf of their Daughter, L.A.S., vs Robert Snyder, the Girard School District, and Gregory Yarbenet

50. Plaintiffs were injured by state-created danger in that the harm they suffered was foreseeable and followed directly from the fact that Yarbenet was permitted an essentially unlimited license

to entice and draw young girl students into his classroom during the school day, when no one else was present, and use such occasions to inflict sexual harm.

51. The harm inflicted upon S.A.S. and L.A.S. was a foreseeable result of the action of the School District and the School District staff.  The practice and policy of allowing a teacher to seclude himself in a darkened locked room with young girls shocks the conscience.

52. Robert Snyder acted with willful disregard for the safety and constitutional integrity of the Plaintiffs.  He was told repeatedly about many inappropriate situations that took place between Yarbenet and the Plaintiffs.  After receiving the reports of impropriety, Snyder conducted no investigations, issued no disciplinary warnings, and in general took no steps to ensure that S.A.S. and L.A.S. were protected.

53. The harm ultimate caused S.A.S. and L.A.S. was foreseeable and flowed directly from the school district's conduct of entrusting young girls to Yarbenet's custody.  The teachers who released S.A.S. and L.A.S. to Yarbenet's custody acted in willful disregard of safety of S.A.S. and L.A.S. in violation of School

District policy, but nevertheless in accordance with accepted practice and custom.

54.   L.A.S. and S.A.S. were assigned to classes and were compelled to be in those classes under policy and state law. Nevertheless, the teachers in those classes would release S.A.S. and L.A.S. to Yarbenet's custody.  Yarbenet, in complicity with the teachers, and eventually the administration, used his authority to create an opportunity that otherwise would not have existed and was able to obtain custody and control over S.A.S. and L.A.S., so that he could abuse them.

55.   The harm suffered by S.A.S. and L.A.S. flowed from the state-created danger.

### Count III

### Violation of Plaintiffs' Fourth, Fifth and Fourteenth Amendment Rights

### S.A.S. and John and Mary Ellen, on behalf of their Daughter, L.A.S., vs Robert Snyder, the Girard School District, and Gregory Yarbenet

56.  Yarbenet employed School District policies, practices, and procedures to entice the Plaintiffs to his room, confine them to his room, and engage in a touching of a sexual nature over a period of time.

57. This conduct violated Plaintiffs' Fourth and Fifth Amendment rights to be free from unlawful seizure and their rights to bodily integrity, as well as the Fourteenth Amendment protection of substantive due process.

58. Yarbenet's conduct was facilitated by policies and practices of the School District and the deliberate indifference of the Defendant Snyder. Yarbenet employed practices, customs and policies of the School District as promulgated and enforced by Snyder to obtain control of students, such as S.A.S. and L.A.S., when they were assigned to other classes and should have been under the care of teachers in a classroom situation.  Yarbenet took advantage of the opportunities presented by the acquiescence of the other Defendants to seclude himself with S.A.S. and L.A.S. and to actually detain them in his classroom and other areas of the school, where he violated their liberty by detaining them behind locked doors.

## Count IV

## Article I, §§26 and 28 Pennsylvania Constitution – Prohibition Against Discrimination Based on Gender

## S.A.S. and
## John and Mary Ellen S., on behalf of their Daughter, L.A.S., vs Robert Snyder, the Girard School District, and Gregory Yarbenet

59.   Article I, §26 of the Pennsylvania Constitution outlaws discrimination by the Commonwealth or any political subdivision thereof.

60.   Article I, §28 of the Pennsylvania Constitution outlaws discrimination based on sex or gender.

61.  By virtue of having placed the Plaintiffs in harm's way, and by failing to protect the Plaintiffs from sexual assault, the Defendants abridged the Plaintiffs' rights under Article I, §§26 and 28 of the Pennsylvania Constitution.

## Injuries

62.  Each of the Plaintiffs was severely and lastingly injured as a result of the conduct of the Defendants.  They were, obviously,

the subject of a gross and incalculably harmful experience with Yarbenet. Yarbenet manipulated them, utilizing their minority and their emotional immaturity, coupled with the power and authority which he had over them, to coerce and persuade them into engaging in sexual activity with him, when neither had an interest and neither was at an age where they could form an affirmative interest. The conduct persisted over many many months, compelling S.A.S. and L.A.S. to face the awful reality that each school day would involve being molested by Yarbenet, while other faculty and administration did nothing. They each were precluded from enjoying a meaningful educational experience. S.A.S. and L.A.S. also suffered injuries to their education and development. Yarbenet's conduct grossly impaired their educational experience. Each Plaintiff has suffered gaps in her learning and suffered interruption of her education, and each is permanently injured by these events. The damages they have suffered include mental illness, humiliation, anxiety, stress, worry and embarrassment directly as a result of the conduct of all the Defendants.

## **Relief**

63.   The Plaintiffs request this court assume jurisdiction over this matter and enter a judgment against all Defendants for compensatory damages and against the individual Defendants for punitive damages.   Plaintiffs also seek counsel fees and such other relief as is just and appropriate.


Respectfully submitted,

s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
Carolyn Spicer Russ, Esquire
Pa. I.D. No. 36232
Richard Matesic, Esquire
Pa. I.D. No. 72211
*Attorneys for Plaintiffs*

1007 Mt. Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975