```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA
```

| | |
|---|---|
| STACY S.; and JOHN and MARY ELLEN S., on behalf of their daughter, LEIGH ANN S., a minor | Civil Action No. 04-150E |
| Plaintiff, | Jury Trial Demanded |
| v. | |
| | ELECTRONICALLY FILED |
| GIRARD SCHOOL DISTRICT; ROBERT SNYDER, Individually and in his capacity as Principal of the Rice Avenue Middle School; and GREGORY YARBENET, a professional employee of the Girard School District, | |
| Defendants. | |

**PLAINTIFFS' MOTION TO COMPEL
RESPONSES TO DISCOVERY AND FOR AN ORDER OF COURT
ALLOWING ADDITIONAL DEPOSITIONS**

**I.   STATEMENT OF THE CASE**

Plaintiffs are two young women who were molested by a sixth grade science teacher in the Girard School District.

Plaintiffs filed a claim against the Girard School District based on 42 U.S.C. §1983. Their claim asserts that the Defendants School District and Robert Snyder were deliberately indifferent to the molestation of the Plaintiffs by Yarbenet.

**II.  THE PRESENT DISCOVERY DISPUTE**

The present discovery dispute involves two problems. The first dispute is centered on Plaintiffs' efforts to secure

information about other instances of faculty sexual misconduct. In connection with this matter, Plaintiffs seek an Order permitting them to reopen depositions and compelling the production of documents. The relief ought to be granted because Defendants were not forthcoming with significant evidence sought by the Plaintiffs in discovery. Defendants' failure to respond to discovery requests has prejudiced Plaintiffs' efforts to develop their case. The second dispute involves a new affirmative defense which has recently been asserted in Defendants' answer to Plaintiffs' amended complaint. Plaintiffs seek a deposition to inquire about the factual issues of that defense.

### A. Discovery Seeking Other Instances of Faculty Sexual Misconduct

The question surrounding other instances of faculty misconduct goes back to Plaintiffs' original efforts to discover evidence about the existence of a policy or practice at the Girard School District to ignore complaints of faculty sexual misconduct. Included within the initial discovery the Plaintiffs served on Defendants were document requests seeking to elicit whether the Girard School District maintained a pattern and practice of ignoring faculty sexual misconduct.

In Plaintiffs' First Request for Production of Documents, which were served on Defendants on the 23rd day of September, 2004, Plaintiffs made the following requests:

> 6. Any document which evidences a complaint about any teacher which includes an allegation that the teacher engaged in sexually inappropriate conduct relative to a student from 1990 to the present.
> Response:
>
> 7. Any documents which were authored or received from 1990 until the present in the possession of the guidance counselor which in any way references, reports, records or otherwise evidences student complaints of instances of sexual harassment or sexually inappropriate conduct involving faculty members and students.
> Response:
>
> 8. Any records of complaints about faculty misconduct which were generated or presented by any student or parent from 1990 until the present accusing faculty members of inappropriate touching of students or the use of any sexually suggestive language.
> Response:

The Defendants' response to the first request stated:

Response: The Girard School District and Robert Snyder object to Request No. 6 on the grounds that it is overly broad, unduly burdensome and vague. These defendants further object to the reference to "sexually inappropriate conduct" as unduly vague and ambiguous. These defendants further object to the request to the extent that it seeks information regarding potential incidents after the termination of Greg Yarbenet as any such incidents would be irrelevant to this action. Without waiving these objections, the Girard School District and Robert Snyder respond that they are in possession, custody and control of no such documents.

The response to request No. 6 was incorporated in the Defendants' response to requests Nos. 7 and 8, as well.

In the Second Request for Production of Documents, served on the 15th day of April, 2005, Plaintiffs requested the following information at request No. 8:

> 8. All records maintained by Gayla DeMarco which record, report or preserve complaints of students or

3

> parents or other faculty or staff against teachers, staff or administrators alleging sexual abuse, sexual harassment or any other teacher misconduct between the 1995-96 school year and the 2003-04 school year.
> Response:

The Defendants did not respond to this request. Plaintiffs now believe that the Defendants' response to these requests was not accurate or adequate. As will be discussed below, there were other instances of reports of faculty sexual misconduct which were not reasonably disclosed by Defendants.

However, the inadequacy of the answers was not immediately apparent, and only became obvious as Plaintiffs secured additional information about other instances of faculty misconduct from persons unrelated to the School District. In other words, Plaintiffs originally prepared for and conducted depositions under the predicate fact, advanced by Defendants' initial response to discovery, that there were no other incidents of faculty sexual misconduct.

### B. The Initial Efforts to Discover the Contours of Tony Verga's Misconduct

However, Plaintiffs did acquire some information, gleaned through public or general community knowledge, that there might have been other instances of faculty misconduct. In essence, Plaintiffs had heard rumors about other faculty members. Therefore, when they deposed Snyder and DeMarco, they attempted to

gather information about one such person, Anthony Verga. Specifically, Plaintiffs had heard that another faculty member by the name of Anthony Verga, who also taught at the middle school when Yarbenet taught there, might have engaged in faculty sexual misconduct.

Hence, Plaintiffs questioned Snyder about other instances of faculty sexual misconduct at his deposition on April 8, 2005. Snyder was asked, "Did you ever receive any accusation or report that there was inappropriate sexual activity or conduct going on?" He answered: "No." **(80a)** When asked specifically about Verga, Snyder stated that he was aware of allegations that Verga viewed pornography on a computer, but that the investigation into the situation was conducted by Superintendent Walter Blucas. **(80a)** Snyder did not reveal that he met with students about Verga or, indeed, that he had even met with Verga. Most emphatically, he did not admit that he was significantly involved in an investigation of Verga, or that as a result of that investigation he exonerated Verga and was part of an administration effort to hush up any inquiry into Verga's conduct. This information only came to light after Snyder's deposition was conducted.

### C.   The Information Provided by Third Parties about Verga

After conducting Snyder's deposition, and in fact after conducting the deposition of then-superintendent Walter Blucas and

Gayla DeMarco, Plaintiffs continued their investigation of the facts surrounding Verga by interviewing members of the community. An entirely different picture of the Verga situation came to light as a result of this investigation.

Verga was a teacher with significant seniority, who viewed pornography on his classroom computer while his sixth grade students were present in the room. Students were easily able to observe the pornography. "It was impossible not to see what he was looking at," according to an affidavit prepared by one of the students who reported Verga to Snyder. **(5a)**

Several students were offended by Verga's conduct and reported it to the guidance counselor, Gayla DeMarco. Nothing was done. EG states that she and another student left a note in the guidance counselor's box that the counselor called the "safe zone." **(5a)**

At a meeting involving the guidance counselor and Defendant Snyder, the complaining students were told Verga had been observing "artwork" and they were "made...[to] feel stupid for saying anything." The students were also told they "should keep this a secret and not tell anybody." **(6a)**

EG's mother, Wendy G, relates in her affidavit that she learned from a neighbor about the situation, not her daughter. She was incensed that a teacher was viewing pornography on a computer in class. Wendy G met with Principal Bob Snyder, who told her that he "had talked to Mr. Verga about what he was watching on his

computer.  Mr. Snyder said that what Wendy G's daughter had seen was either an accidental, one-time thing, or it was art." **(10a)** Gayla DeMarco admitted at that meeting "that she had told [Wendy G'] daughter that she should not spread this around, but denied telling her that she should not tell anyone." **(10a)**

Wendy G was not satisfied with the explanation she received from Snyder and she called the superintendent, Wally Blucas, who was "not polite...and, in fact, [was] rude to me." **(10a)** Blucas did nothing.  Thereafter, Wendy G went to a school board meeting and approached the school board about it.  The school board did nothing, either. **(60a-65a)**

Frustrated by the School District's indifference to Verga's conduct, Wendy G organized other parents who shared her disgust that the School District would do nothing to discipline Verga.  She invited other parents to her house because she felt "completely ignored by the school.  And I felt nothing was being done.  So I was going down the line from the principal, to the superintendent, to the school board, and still feeling like nothing was being done, I thought I would make it public." **(68a)** She and the other parents attended the next school board meeting "to express our concern about Mr. Verga watching pornography on his computer in the sixth grade classroom." Eventually, Wendy G also resorted to distributing a flyer, which she put on windshields of cars throughout Girard, in order to get the School District's attention. **(2a, 66a-67a)**  At

7

that second board meeting, attended by Wendy G and other parents, one of the board members "called us 'Bible-thumping witch-hunters.' He accused us of using Nazi tactics." The Verga situation was not investigated by Blucas until the media published reports about the parents' protest. **(17a-19a)**

Hence, it was not until months after the first report of faculty sexual misconduct, after a concerned parent complained to the principal, then the superintendent, and they attended two board meetings, and got the media involved, that the School District took any action relative to Verga. It then discovered that Verga had been visiting numerous pornographic sites on his computer during class time on a routine basis. In the course of just two days, Verga was found to have visited such sites hundreds of times. **(23a-58a)** Only at that point was Verga convinced to resign, under threat of discharge.

### D.  Renewed Discovery Requests Concerning Verga

Up to the point of being provided with a copy of Wendy G's affidavit, the Defendants had not provided one document concerning Verga. After presenting the Defendants with these affidavits, Plaintiffs requested additional discovery. Since Snyder had already been deposed, and had denied, in his deposition, that he had had anything to do with the Verga situation, Plaintiffs served a Rule 30(b)(6) deposition notice on the Defendants.

The notice sought the following discovery:

> The circumstances by which the School District handled the investigation leading to termination of teacher Anthony Verga, the contents of any agendas or minutes of school board meetings where parents spoke about Verga, and any steps taken by Robert Snyder or other school administrators in response to complaints from students.

A document request was also served.  **(14a-16a)**

The Defendants designated an attorney, Richard Perhacs, to testify about the Verga incident.  Perhacs admittedly never talked to Snyder about the incident and had no knowledge about Snyder's conversations with Verga. **(72a)**

The Defendants finally produced documents concerning Verga on September 22, 2005, the day before the 30(b)(6) deposition was conducted.  This was one year after Plaintiffs' original document request.  One document was prepared by Snyder.  It is a memo written by Snyder to Verga.[1] **(1a)**  In that memo, Snyder wrote, "I do not believe your actions were ever malicious or corrupt.  I have no reason to doubt your word about the innocence of your browsing..." Snyder further advised Verga not to look at questionable sites during his class and then requested that "if, at any time, any type of pornographic or objectionable material is produced on your computer, you would notify me immediately.  This

---

[1] Incredibly, the Defendants did not produce Snyder's memo to Verga until specifically asked to in connection with a third request for production of documents and the deposition under Rule 30(b)(6).

puts me on notice that the potential for controversy exists and we can 'head it off at the pass.'" **(1a)**[2]

This document, which was not produced in response to the earlier discovery request, shows that Snyder, in fact, did talk to Verga. And, contrary to his deposition denials about whether he investigated the allegations against Verga, Snyder had investigated the charge. Snyder specifically exonerated Verga.

### E. The Problems with Defendants' Rule 30(b)(6) Compliance

Perhacs, the individual designated for the Rule 30(b)(6) deposition, indicated that his contact in terms of dealing with the Verga matter was "exclusively Mr. Blucas." **(70a)** He had no recollection of speaking to anyone else, including Snyder, about Verga. **(71a)** In fact, his involvement with the investigation did not come when Snyder was interviewing and exonerating Verga, but much later when the matter had received publicity. Based upon notes which Perhacs made, he estimated that it was three months between the time that Snyder interviewed Verga on December 18 and the call

---

[2]There is a stark similarity between the friendly advice Snyder gave to Verga and that he gave to Yarbenet on the occasion that he admits speaking to Yarbenet about Stacy. Hence, on at least one occasion, Snyder admitted to conducting an investigation of a report and learning that 55-year-old Yarbenet considered Stacy his close friend and confidante and looked to him for therapy, or counseling, relative to the death of his first wife (who had died some ten years earlier.) At that time, Snyder told Yarbenet to "be careful" because "it did not look good" to people who did not know him. **(77a-78a)**

from the School District getting him involved in Verga's dismissal. Perhacs made the following note: "3 mos. later [after the first complaint] -- Flyers on cars -- No complaints to Bd. or Admin. 7 students -- all said they saw it."[3] **(17a)**

The failure to designate a person who had firsthand knowledge about Snyder's investigation of Verga, coupled with the School District's failure to produce Snyder's memo in a timely fashion, in response to the First Request for Production of Documents, coupled with Snyder's untruthful testimony in his deposition that it was Blucas and not he who investigated Verga, has prejudiced Plaintiffs. To avoid prejudice it is necessary to reopen Snyder's deposition and the deposition of the guidance counselor, Gayla DeMarco, to secure information about why Snyder exonerated Verga, and why no action was taken by her.

Plaintiffs' counsel advised Defendants' counsel that he believed that the Defendant School District should either have designated Snyder for the Rule 30(b)(6) deposition or, alternatively, agree to the reopening of Snyder's deposition so that Snyder could be questioned about Verga and the memo he wrote. There was no agreement reached between counsel, and Plaintiffs thus present this motion.

---

[3] It is obvious that Blucas lied to Perhacs when he gave Perhacs the information related in Perhacs' notes. Blucas was not truthful since he insisted that there had been no complaints to Snyder or the administration in the intervening three months. **(75a)** Perhacs acknowledges the notes were made by him. **(73a-75a)**

Plaintiffs believe that they should be allowed to reopen the deposition of Snyder and Gayla DeMarco based upon the conduct of the Defendants as recited above.

### F. The Report of Sexual Misconduct Contained in the Board Policy Agenda Meeting

Another problem exists in the area of other faculty sexual misconduct. Plaintiffs served their Third Request for Production of Documents on Defendants on May 27, 2005. An answer was provided on July 17, 2005.

In response to Plaintiffs' request for information concerning the adoption of policies and procedures governing sexual harassment, the Defendants produced a document, attached hereto as **3a-4a**, which shows that at a board subcommittee for policy review, there was discussion of a sexual misconduct situation which apparently went unpunished because of a perceived defect in the rules. The document indicates that there "is concern among the Committee because steps/procedures are being eliminated frm the revised policy and the lack of specificity. Mr. Blucas said due to the <u>last incident, in the steps in the current policy</u> handicapped the legal position of the District." (emphasis added)

The quote suggests two things: that there had been an incident and that it was <u>the</u> <u>most</u> <u>recent</u> incident. By virtue of the fact that it is the most recent incident, the quote implies that there had been prior incidents. Plaintiffs served an additional document

request seeking information about the instance of faculty sexual misconduct referred to at the Board Policy Meeting. No information about it has been provided.

### G. The Question of Defendants' Affirmative Defense

Plaintiffs filed an amended complaint setting forth their claims under §1983.

Defendants' answer, filed on September 22, 2005, contains affirmative defenses to Plaintiffs' amended complaint. In the answer to the amended complaint, the Defendants asserted an affirmative defense not previously asserted against Plaintiffs.

Hence, Defendants' Ninth Defense of the affirmative defenses states that:

> Plaintiffs and one or more of their parents actively concealed Yarbenet's misconduct from the School District.

Throughout this case, Defendants have denied that they even had any suspicion concerning the alleged molestation of Plaintiffs. Obviously, however, the Defendants' affirmative defense could be seen to allege that an investigation conducted by the Defendants, or their agents, was affirmatively derailed by one of the Plaintiffs or their parents. For this defense to fly, so to speak, it is necessary for a person among the Defendants' staff to have believed that there was abuse going on and to have been actively misled.

Plaintiffs served a Rule 30(b)(6) deposition notice so that they could determine which agent of the Defendants was misled by

13

Plaintiffs.  Plaintiffs are entitled to be provided with the facts supporting this defense.  **(20a-22a)**

In fact, Defendant Snyder specifically denied he ever talked to the parents of Stacy, or Stacy, or LA's parents, concerning this matter.

Therefore, Plaintiffs' request for a Rule 30(b)(6) deposition to identify who was allegedly misled is a valid exercise in discovery and Defendants have no basis for not identifying someone to testify.

                                            Respectfully submitted,

                                            s/ Edward A. Olds
Edward A. Olds, Esquire
Pa. I.D. No. 23601
Carolyn Spicer Russ, Esquire
Pa. I.D. No. 36232
Richard Matesic, Esquire
Pa. I.D. No. 72211
*Attorneys for Plaintiffs*

1007 Mt. Royal Boulevard
Pittsburgh, PA 15223
(412) 492-8975

## **LOCAL RULE 4(a) CERTIFICATE**

    I, Edward A. Olds, Esquire, certify that counsel for the Defendants and I attempted to work out this discovery dispute and that it could not be resolved amicably.

Date: <u>October 6, 2005</u>                              <u>s/ Edward A. Olds</u>
                                                                             Edward A. Olds, Esquire

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 6, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> Richard A. Lanzillo, Esquire
> KNOX McLAUGHLIN GORNALL & SENNETT, P.C.
> 120 West Tenth Street
> Erie, PA 16501

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

> Edward J. Betza, Esquire
> 150 East Eighth Street
> Erie, PA 16501

                                          s/Edward A. Olds, Esquire
                                          _____