```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S.; and JOHN and MARY         )
ELLEN S., on behalf of their        )  Civil Action No. 04-150E
daughter, LEIGH ANN S., a minor     )
                                    )
       Plaintiff,                   )  Jury Trial Demanded
                                    )
       v.                           )
                                    )  ELECTRONICALLY FILED
GIRARD SCHOOL DISTRICT;             )
ROBERT SNYDER, Individually         )
and in his capacity as              )
Principal of the Rice Avenue        )
Middle School; and GREGORY          )
YARBENET, a professional            )
employee of the Girard School       )
District,                           )
                                    )
       Defendants.                  )
```

**PLAINTIFFS' BRIEF IN SUPPORT
OF MOTION TO COMPEL**

Plaintiffs have filed a Motion to Compel seeking an Order of Court requiring the Defendants to respond to discovery and to cooperate with discovery. The Motion to Compel pertains to other instances of faculty sexual misconduct. The Defendants have resisted the discovery claiming that evidence of other faculty misconduct is not relevant. Plaintiffs believe that it is relevant, have filed the Motion, and submit this Brief in support of the Motion.

**1)  The Disputed Discovery Information Demonstrates a Pattern or Practice of Indifference to Faculty Sexual Misconduct**

The Plaintiffs have been severely prejudiced by the

Defendants' failure to candidly reply to discovery requests. The information about other instances of faculty misconduct was not provided to Plaintiffs prior to their conducting the deposition of Defendant Robert Snyder or Gayla DeMarco. It was not provided until September 22, 2005, in fact, almost a year after the discovery requests were originally served. Instances of condoned faculty sexual misconduct are obviously relevant to Plaintiffs' 42 U.S.C. §1983 claim and Plaintiffs should be allowed to reopen depositions of Snyder and DeMarco to make inquiries about the matter. The information is probative of the existence of a pattern and practice of ignoring faculty sexual misconduct. The evidence would also be relevant as to Snyder's motives, intent and design with respect to responses to complaints about faculty sexual misconduct.

    The legal standard applicable to Plaintiffs' claim under 42 U.S.C. §1983 was set out in the case of **Stoneking v Bradford Area School District**, 882 F.2d 720 (3d Cir. 1989). The court found a cause of action under 42 U.S.C. §1983 based upon the supervisory Defendant's "adopting and maintaining a practice, custom, or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and in discouraging students complaining about such conduct...." **Id.** at 724,725.

    In **Stoneking**, supra, the court reviewed evidence that students

had complained about other teachers and found out that the School District and the individual Defendant did nothing and, in fact, either concealed the complaints about teachers or failed to discipline the teachers for sexual misconduct. **Id**. at 728,729. Hence, evidence concerning the conduct of other teachers and the School District's receipt of evidence concerning those teachers is relevant.

The observations of Judge Lee in **Seneway v. Canon McMillan School District**, 969 F.Supp. 325 (W.D.Pa 1997), show how the evidence which was not turned over is relevant to the deliberate indifference test that the fact finder employs to determined liability. In **Seneway** there were:

> numerous allegations that individual defendants had knowledge of instances of Neuman's inappropriate behavior with minor female students before the time at which the plaintiff was allegedly abused. There are also various allegations that no effective action, disciplinary or otherwise, was taken by these three defendants, that they concealed from the parents of other female students and various public officials, including the police department, the various reports and accusations made against Neuman, and that they failed to properly and vigorously investigate various reports of sexual abuse of female students prior to plaintiff's complaints. **Seneway**, 331,332.

The circumstance surrounding Verga's exoneration by Snyder is probative of the question of deliberate indifference, therefore. The Defendants' failure to timely produce the evidence concerning Snyder's investigation and cover-up of Verga's misconduct so that

Snyder and DeMarco could be questioned about such matter prevented Plaintiffs from developing this important aspect of the case. They should be permitted to reopen Snyder's and DeMarco's deposition.

2) **The Discovery which Plaintiffs seek could also be Probative of Whether Snyder was Deliberately Indifferent to the Abuse Suffered by Plaintiffs**

Deliberate indifference is viewed under a subjective standard and is determined by what the public official "actually knew rather than what a reasonable official in his position should have known." **Beers Capital v Wetzel**, 156 F.3d 120,131 (3d Cir. 2001) quoting **Farmer v. Brennen**, 511 U.S. 825,114 S.Ct. 1970, 128 L.E2d 811 (1994) The subjective knowledge requirement or the Defendants' "knowledge of risk can be proved indirectly by circumstantial evidence." **Id**.  Therefore, under 42 U.S.C. §1983, the question of what Snyder subjectively knew is crucial.

The Third Circuit has enunciated the following test to determine supervisory liability when a constitutional tort is committed by a subordinate:

> [A] plaintiff asserting a failure to supervise claim must not only identify a specific supervisory practice that the defendant has failed to employ, he or she must also allege both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval.  **C.H. v. Oliva**, 226 F.3d 198, 202 (3d Cir.2000) (en banc) (emphasis added) (internal quotes and citations omitted); **Montgomery v. DeSimone**, 159 F.3d

>120, 127 (3d Cir.1998) (same). The Third Circuit has held that this standard requires "actual knowledge and acquiescence," which "can be inferred from circumstances other than actual sight." **Baker**, 50 F.3d at 1194 **Baker v. Monroe Township**, 50 F.3d 1186, 1194 (3d Cir.1995).

**Maslow v. Evans**, 2003 W.L. 2259 4577 (E.D.Pa.) *13

As **Maslow** noted, while the formula to determine supervisory liability requires knowledge of a "prior pattern of similar incidents," there is precedent which suggests that prior acts of misconduct amounting to less than a "pattern" may suffice. " **Id**. at *13. In **Beers-Capitol**, supra, the court held that: [T]here are situations in which the risk of constitutionally cognizable harm is so great and so obvious that the risk and the failure of the supervisory officials to respond will alone support findings of the existence of an unreasonable risk, of knowledge of that unreasonable risk, and of indifference to it." **Id.** at 134; see also **Berg v. County of Allegheny**, 219 F.3d 261, 276 (3d Cir. 2000) (plaintiff may establish supervisory liability "without showing a pattern of constitutional violations" by demonstrating that supervisor's actions reflected deliberate indifference to "obvious" or "highly predictable" consequences) (emphasis added) (cite omitted); **Stoneking v. Bradford Area Sch. Dist.**, supra 882 at 725 ("if the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, 'the policymakers ... can reasonably be said to have been

deliberately indifferent to the need." ') (quoting **City of Canton**, 489 U.S. at 390)).  The fact that there are such close parallels between Snyder's deflecting criticism of Verga and criticism of Yarbenet show obvious relevance to the handling of Verga to this case.

As demonstrated by the affidavit of student EG, Snyder discouraged the students from complaining about the sexual misconduct of Anthony Verga since "Mr. Snyder called us into his office... [and] said they [Snyder and DeMarco] had looked into it, and it was either artwork or Mr. Verga was testing the new computer system. They said we need not make a big deal out of it.  They made me feel stupid for saying anything." **(5a)**

In the present case, there were also reports of misconduct committed by Yarbenet which were opposed by Snyder's assurances that there was nothing wrong.  Members of the staff and public reported what they thought to be improper conduct. **(See Motion to Amend, generally, pp 10-25, see Docket No. 23)**  Hence, an aide, Kim Jenke, testified that she "observed some things that made me feel uncomfortable at the time," **(82a)** and went to Mr. Snyder about it." **(83a)**   Jenke said that "this went on for the two years that I remember being in this homeroom... it did continue." **(84a)**  She related that when she spoke to Snyder, she told him that "I had seen Stacy and Greg come out of [the TV studio]... it was weird, a teacher should not be doing that.  And then I told him about

observing how Greg would watch her, and how it made me feel. And he told me to write it all down." **(83a-84a)** However, Snyder falsely told her and others who reported Yarbenet that parents approved of the relationship between Yarbenet and Stacy.

Thus, according to Jenke, Snyder told her "that he had talked with the mother. And that she had told him that Greg was mentoring Stacy, and that she was well aware of their relationship and did not have a problem with it... And he said the School District -- their hands were tied if the mother did not have a problem with it." **(84a)** Jenke reiterated that Snyder "told me that it was out of the School District's hands because the parents had said he's mentoring her, they go to church together, and that they're good friends." **(85a)** Snyder's attempt to deflect concerns about Verga is mirrored in his attempt to deflect concerns about Yarbenet.

This is why Snyder's efforts to cover up for Verga could be probative of the design, motive, or intent relative to his handling of the complaints lodged against Yarbenet. In other words, Snyder received reports of misconduct by Yarbenet and deflected those reports by claiming that the parents consented to Yarbenet's conduct. Relative to the Verga matter, when children reported the offensive conduct, Snyder deflected their complaint by telling them that Mr. Verga was viewing "art" or "testing the new computer security system." **(5a-8a)** It could be inferred that Snyder deliberately steered concerned persons away from the

horrible events which were occurring.  By ignoring reports of misconduct and failing to conduct even a minimal investigation, Snyder deliberately allowed the misconduct to continue.

### 3) The Information About Verga Could Be Admissible Under Rule 404(b) Federal Rules of Evidence

The proposed discovery could lead to evidence which is admissible under Rule 404(b).[1] Rule 404(b) prohibits the admission of other acts evidence for the purpose of showing that an individual has a propensity or disposition to act in a particular manner. **Gov't of the Virgin Islands v. Pinney**, 967 F.2d 912, 914 (3d Cir.1992). Such evidence may, however, be admitted if offered for a proper purpose apart from showing that the individual is a person of a certain character. **Id**.  Hence, for other acts evidence to be admissible under the exceptions listed in Rule 404(b), (1) the evidence must have a proper purpose; (2) it must be relevant under Rule 401 and 402; (3) its probative value must outweigh its prejudicial effect under Rule 403; and (4) the court must charge the jury to consider the evidence only for the limited purpose for

---

[1] A Rule 404(b) Fed.R.Evid. limits the admissibility of otherwise relevant evidence. Rule 404(b) provides:
> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

which it was admitted. **United States v. Sampson**, 980 F.2d 883, 886 (3d Cir.1992) (citing **Huddleston v. United States**, 485 U.S. 681, 691-92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

In the employment litigation context, evidence of an employer's conduct towards other employees is admissible, since it is probative of whether an employer's proffered justification is pretext. See, e.g., **McDonnell Douglas Corp.**, 411 U.S. at 804, 93 S.Ct. 1817 (stating that evidence that employees of another race were treated differently from the plaintiff under comparable circumstances is "[e]specially relevant" to whether employer's proffered explanation is pretextual); **Becker v. ARCO Chemical Co.**, 207 F.3d 176, 194 n. 8 (3d Cir.2000) (citing cases holding that, "as a general rule, evidence of a defendant's prior discriminatory treatment of a plaintiff or other employees is relevant and admissible under the Federal Rules of Evidence to establish whether a defendant's employment action against an employee was motivated by invidious discrimination"). Since the deliberate indifference test is one which measures the subjective knowledge or mental state of a particular defendant, Snyder's treatment of other instances involving reports of faculty sexual misconduct are probative of whether Snyder's protestations of lack of knowledge about the general case are worthy of belief. The evidence of his handling of the Verga matter would therefore be admissible under Rule 404(b).

Snyder's response to prior instances of sexual misconduct

could also be used by a jury in considering his truthfulness about his knowledge of Yarbenet's abuse of Plaintiffs.  He misled the students who complained about Verga.  He was not truthful to Kim Jenke, either.  An inference that Snyder is not being truthful about his knowledge of the relationship between Yarbenet and the Plaintiffs is consistent with the general principle of evidence law that the factfinder is entitled to consider a party's dishonesty about a material fact as "affirmative evidence of guilt." **Wright v. West**, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992); see also **Wilson v. United States**, 162 U.S. 613, 620- 621, 16 S.Ct. 895, 40 L.Ed. 1090 (1896); 2 J. Wigmore, Evidence § 278(2), p. 133 (J. Chadbourn rev. 1979).

For these reasons, it is crucial that the Plaintiffs be able to make a full inquiry into how Snyder handled the Verga matter and what he knew.  That is why the Plaintiffs should be able to reopen Snyder's deposition and Gayla DeMarco's deposition, since Gayla DeMarco received reports of Verga from students.

**4)   The Plaintiffs Attempt to Take Discovery About Defendants' Newly Asserted Affirmative Defenses**

The Plaintiffs also seek to compel the Defendants to produce an individual to testify about a new affirmative defense set forth in response to Plaintiffs' recently filed amended complaint. As noted in the motion, the affirmative defense implies that Plaintiff, or their parents actively misled School District

officials.

In order for such a defense to exist and be valid, there must be a person who was misled. Snyder denied talking to Stacy's parents, however. When asked whether he ever talked to Mrs. S. to see whether it was okay with her for Yarbenet to be alone with Stacy, he acknowledged that he had not. **(79.1a)** He never talked to Stacy's father, either.

> Q   Did you ever talk to Stacy's father?
>
> A   No.
>
> Q   Did you ever talk to Leigh Ann's mother or father about whether it was appropriate for her and Yarbenet to be alone?
>
> A   No. **(79.1a)**

If Defendants were misled, presumably there is someone, an identifiable person who suspected that there was abuse, but failed to act on that suspicion because they relied upon representations of Stacy S. or her family concerning the family's approval of Stacy S.'s relationship with Yarbenet. However, the Plaintiffs do not know who was misled or what information the Defendants claim to have concerning being misled. It is crucial that Plaintiffs be permitted to inquire as to who has that knowledge.

For these reasons, the Plaintiffs' motion to compel concerning their last Rule 30(b)(6) deposition motion should be granted.

        Respectfully submitted,


        s/ Edward A. Olds
        Edward A. Olds, Esquire
        Pa. I.D. No. 23601
        Carolyn Spicer Russ, Esquire
        Pa. I.D. No. 36232
        Richard Matesic, Esquire
        Pa. I.D. No. 72211
        *Attorneys for Plaintiffs*

        1007 Mt. Royal Boulevard
        Pittsburgh, PA 15223
        (412) 492-8975

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 6, 2005, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

        Richard A. Lanzillo, Esquire
    KNOX McLAUGHLIN GORNALL & SENNETT, P.C.
          120 West Tenth Street
            Erie, PA 16501

and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:

         Edward J. Betza, Esquire
         150 East Eighth Street
           Erie, PA 16501


                                        s/Edward A. Olds, Esquire
                                        _____