0201316023

# PA SCHEDULE D

Sale, Exchange, or
Disposition of Property
PA-40 D (09-02)  **2002**

OFFICIAL USE ONLY

If you need more space, you may photocopy this schedule or prepare your own schedule in this format.

Name of the taxpayer filing this schedule (if filing jointly enter the name shown first):
**Yarbenet, Gregory J.**

Social Security Number:
**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**

**Important.** Each spouse should file a separate PA Schedule D. If selling jointly owned property, submit a schedule for only that property. A spouse may not offset his/her gains and losses against the other spouse's gains and losses. If filing separately and selling jointly owned property, each spouse reports only his/her half of the sale on his/her separate **PA Schedule D. Read the instructions.** Enter all sales, exchanges, or other dispositions of real or personal tangible and intangible property, including inherited property. Amounts from Federal Schedule D may not be correct for PA income tax purposes. Nonresidents should read carefully the instructions concerning intangible property. If the result is a loss, fill in the box next to the line.

| (a) Describe the property: 100 shares of XYZ stock, or 10 acres in Dauphin County | (b) Date acquired Month/day/year | (c) Date sold Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | | (f) Gain or loss (d) minus (e) If a loss, fill in the box |
|---|---|---|---|---|---|---|
| 1. | | | | | LOSS | |
| Flextronics Intl LTD | Various | Various | 1,082,677 | 1,081,505 | | 1,172 |
| General Electric Co | Various | Various | 52,863 | 51,500 | | 1,363 |
| IVoice Inc | 10/01/97 | 12/26/02 | -11 | 928 | X | -939 |
| Digitec 2000 Inc | 11/11/97 | 12/26/02 | -15 | 1,823 | X | -1,838 |
| Jabil Circuit Inc | | | | | | |
| COM | Various | Various | 217,818 | | X | -5,822 |
| Wash Sale | | | | | | 5,822 |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | | |
|---|---|---|---|
| 2. Net gain or loss from above sales. | LOSS ☒ | 2. | -242 |
| 3. Gain from installment sales from **PA Schedule D-1**. | | 3. | |
| 4. Taxable distributions from C corporations ............ Enter total distribution | | | |
| ............ Minus adjusted basis | = | 4. | |
| 5. Net gain or loss from the sale of 6-1-71 property from **PA Schedule D-71**. | LOSS | 5. | |
| 6. Net partnership gain or loss from your **PA Schedule(s) RK-1** or **NRK-1**. | LOSS | 6. | |
| 7. Net PA S corporation gain or loss from your **PA Schedule(s) RK-1** or **NRK-1**. | LOSS | 7. | |

**Taxable gain from the sale of your principal residence.** Complete and submit **Form PA-19.** Complete Columns (a) through (e) and enter your total gain on Line 8.

| (a) Address of residence | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss (d) minus (e) |
|---|---|---|---|---|---|
| | | | | | |

| | | | |
|---|---|---|---|
| 8. Taxable gain from the sale of your principal residence. If you realized a loss on the taxable portion of the sale of your principal residence, enter a zero. | | 8. | |
| 9. Taxable distributions from partnerships from **PA Schedule D (P/S)**. | | 9. | |
| 10. Taxable distributions from PA S corporations from PA Schedule D (P/S). | | 10. | |
| **11. Total PA taxable gain or loss.** Add Lines 2 through 10. Include on Line 5 of your PA-40. If a net loss, fill in the box. | LOSS ☒ | 11. | -242 |

274701/12-10-02

*Exhibit 4*

0301320016

# PA SCHEDULE D

Sale, Exchange, or
Disposition of Property
PA-40 D  (09-03)  **2003**

OFFICIAL USE ONLY

If you need more space, you may photocopy this schedule or prepare your own schedule in this format.

| Name of the taxpayer filing this schedule (if filing a PA-40 jointly enter the name shown first) | Social Security Number (shown first) |
|---|---|
| Yarbenet, Gregory J. | 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 |

**Important.** Each spouse should file a separate **PA Schedule D.** If selling jointly owned property, submit a separate **PA Schedule D** for only that property. A spouse may not offset his/her gains (losses) against the other spouse's gains (losses). If filing separately and selling jointly owned property, each spouse reports only his/her half of the sale on his/her separate **PA Schedule D. Read the instructions.** Enter all sales, exchanges, or other dispositions of real or personal tangible and intangible property, including inherited property. Amounts from Federal Schedule D may not be correct for PA income tax purposes. Nonresidents should read carefully the instructions concerning intangible property. If the result is a loss, fill in the box next to the line.

| (a) Describe the property: 100 shares of XYZ stock, or 10 acres in Dauphin County | (b) Date acquired Month/day/year | (c) Date sold Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss (d) minus (e) If a loss, fill in the box |
|---|---|---|---|---|---|
| 1. | | | | | LOSS |
| See Statement 3 | | | | | |

| | | | LOSS | | |
|---|---|---|---|---|---|
| 2. Net gain (loss) from above sales. | | | X | 2. | -6,654 |
| 3. Gain from installment sales from **PA Schedule D-1.** | | | | 3. | |
| 4. Taxable distributions from C corporations .................Enter total distribution | | | | | |
| ...........................................................Minus adjusted basis | | | = | 4. | |
| 5. Net gain (loss) from the sale of 6-1-71 property from **PA Schedule D-71.** | | | LOSS | 5. | |
| 6. Net partnership gain (loss) from your **PA Schedule(s) RK-1** or **NRK-1.** | | | LOSS | 6. | |
| 7. Net PA S corporation gain (loss) from your **PA Schedule(s) RK-1** or **NRK-1.** | | | LOSS | 7. | |

**Taxable gain from selling a principal residence.** Complete and submit **Form PA-19.** Complete Columns (a) through (e) and enter your total gain on Line 8.

| (a) Address of residence | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss (d) minus (e) |
|---|---|---|---|---|---|

| | | | | | |
|---|---|---|---|---|---|
| 8. Taxable gain from the sale of your principal residence. If you realized a loss on the taxable portion of the sale of your principal residence, enter a zero. | | | | 8. | |
| 9. Taxable distributions from partnerships from **PA Schedule D (P/S).** | | | | 9. | |
| 10. Taxable distributions from PA S corporations from **PA Schedule D (P/S).** | | | | 10. | |
| 11. **Total PA taxable gain (loss).** Add Lines 2 through 10. Enter on Line 5 of your **PA-40.** If a net loss, fill in the box. | | | LOSS X | 11. | -6,654 |

374701/09-26-03  CCH

*Exhibit 2*

PA-40                Business, Profession and Farm Net Income        Statement    1

| Description | Taxpayer Amount | Spouse Amount |
|---|---|---|
| Schedule C | | 923. |
| Subtotal | | 923. |
| Total to PA-40, line 4 | | 923. |

PA-40                    Gross Compensation and Withholding          Statement    2

| Description | Income | Total | Withholding |
|---|---|---|---|
| See Schedule W-2S | 1,929. | | 54. |
| Total to PA-40, line 1a | | 1,929. | |
| Total to PA-40, line 13 | | | 54. |

PA Schedule D          Sale, Exchange or Disposition of Property      Statement    3

| Description | Acquired Sold | Gross Sales Price | Cost/Basis | Gain or Loss Taxpayer | Gain or Loss Spouse |
|---|---|---|---|---|---|
| Netflex | Various 01/15/03 | 12,130. | 12,100. | 15. | 15. |
| SANA Health Sciences | Various 01/30/03 | 13,180. | 12,863. | 159. | 158. |
| 2 Global Communication | Various 02/05/03 | 21,389. | 19,900. | 745. | 744. |
| Dell Computer Corp | Various Various | 45,609. | 46,170. | -281. | -280. |
| 2 Global Communication | Various 02/19/03 | 22,229. | 21,870. | 180. | 179. |
| Proquest Company | Various 02/19/03 | 18,369. | 18,220. | 75. | 74. |
| American Pharmaceutical | Various 02/26/03 | 20,979. | 22,470. | -746. | -745. |

0401320015

# PA SCHEDULE D

Sale, Exchange, or
Disposition of Property
PA-40 D  (09-04)  **2004**

OFFICIAL USE ONLY

If you need more space, you may photocopy this schedule or prepare your own schedule in this format.

Name of the taxpayer filing this schedule (if filing a PA-40 jointly enter the name shown first)

Yarbenet, Gregory J.

Social Security Number (shown first)

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

**Important.** Each spouse must file a separate **PA Schedule D** to report his or her sales. If selling jointly owned property, spouse must submit a separate **PA Schedule D** for only that property. A spouse may not offset his/her gains (losses) against the other spouse's gains (losses). If filing separately but selling jointly owned property, each spouse reports his/her share of the gain (loss) from the **PA Schedule D** for the joint sale. Taxpayers must each submit a copy of the "joint" **PA Schedule D. Read the instructions.** Enter all sales, exchanges, or other dispositions of real or personal tangible and intangible property, including inherited property. Amounts from Federal Schedule D may not be correct for PA income tax purposes. Nonresidents should read carefully the instructions concerning intangible property. If the result is a loss, fill in the box next to the line.

| (a) Describe the property: 100 shares of XYZ stock, or 10 acres in Dauphin County | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss: If a loss, fill in the box |
|---|---|---|---|---|---|
| 1. See Statement 3 | | | | | LOSS |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| 2. Net gain (loss) from above sales. | LOSS [X] | 2. | -24,432 |
| 3. Gain from installment sales from **PA Schedule D-1**. | | 3. | |
| 4. Taxable distributions from C corporations. .......... Enter total distribution | | | |
| .......... Minus adjusted basis | = | 4. | |
| 5. Net gain (loss) from the sale of 6-1-71 property from **PA Schedule D-71.** | LOSS | 5. | |
| 6. Net PA S corporation and partnership gain (loss) from your **PA Schedule(s) RK-1 or NRK-1.** | LOSS | 6. | |

**Taxable gain from selling a principal residence.** Complete and submit **Form PA-19.** Complete Columns (a) through (e) and enter your total gain on Line 8.

| (a) Address of residence | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss: (d) minus (e) |
|---|---|---|---|---|---|
| | | | | | |

| | | |
|---|---|---|
| 7. Taxable gain from the sale of your principal residence. If you realized a loss on the taxable portion of the sale of your principal residence, enter a zero. | 7. | |
| 8. Taxable distributions from partnerships from **PA Schedule D (P/S)**. | 8. | |
| 9. Taxable distributions from PA S corporations from **PA Schedule D (P/S)**. | 9. | |
| 10. Taxable gain from annuities. | 10. | |
| 11. **Total PA taxable gain (loss).** Add Lines 2 through 10. Enter on Line 5 of your **PA-40.** If a net loss, fill in the box.   LOSS [X] | 11. | -24,432 |

474701/09-28-04   CCH

PA-40                     Gross Compensation and Withholding              Statement    1

| Description | Income | Total | Withholding |
|-------------|--------|-------|-------------|
| See Schedule W-2S | 945. | | 29. |
| Total to PA-40, line 1a | | 945. | |
| Total to PA-40, line 13 | | | 29. |

---

PA-40           Rents, Royalties, Patents and Copyright Net Income    Statement    2

| Description | Taxpayer Amount | Spouse Amount |
|-------------|-----------------|---------------|
| Schedule E | 38. | 38. |
| Subtotal | 38. | 38. |
| Total to PA-40, line 6 | 38. | 38. |

---

PA Schedule D          Sale, Exchange or Disposition of Property       Statement    3

| Description | Acquired Sold | Gross Sales Price | Cost/Basis | Gain or Loss Taxpayer | Spouse |
|-------------|---------------|-------------------|------------|-----------------------|--------|
| Digital River Inc Com | 01/05/04 01/28/04 | 13,004. | 11,845. | 580. | 579. |
| Chester Holdings LTD Com | 06/28/99 01/28/04 | 185. | 3,656. | -1,736. | -1,735. |
| Sigmatron Intl Inc Com | 03/09/04 03/09/04 | 7,463. | 12,595. | -2,566. | -2,566. |
| Steel Technologies Inc Com | 04/16/04 04/16/04 | 21,130. | 21,020. | 55. | 55. |
| Rockwell Automation Inc Com | 04/27/04 04/27/04 | 6,984. | 6,733. | 126. | 125. |
| Plantronics Inc New Com | 04/29/04 04/29/04 | 39,089. | 38,020. | 535. | 534. |

# PA SCHEDULE D

**Sale, Exchange, or Disposition of Property**
PA-40 D  (09-05)    **2005**

OFFICIAL USE ONLY

If you need more space, you may photocopy.

Name of the taxpayer filing this schedule (if filing a PA-40 jointly enter the name shown first)

**Yarbenet, Gregory J.**

Social Security Number (shown first)

**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**

**Important.** Each spouse must file a separate PA Schedule D to report his or her sales. If selling jointly owned property, spouse must submit a separate PA Schedule D for only that property. A spouse may not offset his/her gains (losses) against the other spouse's gains (losses). If filing separately but selling jointly owned property, each spouse reports his/her share of the gain (loss) from the PA Schedule D for the joint sale. Taxpayers must each submit a copy of the "joint" PA Schedule D. **Read the instructions.** Enter all sales, exchanges, or other dispositions of real or personal tangible and intangible property, including inherited property. Amounts from Federal Schedule D may not be correct for PA income tax purposes. Nonresidents should read carefully the instructions concerning intangible property. If the result is a loss, fill in the box next to the line.

| (a) Describe the property: 100 shares of XYZ stock, or 10 acres in Dauphin County | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss (If a loss, fill in the box) LOSS |
|---|---|---|---|---|---|
| 1. Netgear | 08/22/05 | 08/11/05 | 22,779 | 22,770 | 9 |
| Too Inc Com | 08/22/05 | 08/18/05 | 28,229 | 27,970 | 259 |
| Alpharma Inc Com | 08/23/05 | 08/22/05 | 24,809 | 23,820 | 989 |
| Kendle International Inc Com | 09/01/05 | 08/30/05 | 23,246 | 23,770 | [X] -524 |
| Satyam Computer Services LTD Com | 09/01/05 | 08/24/05 | 26,829 | 27,845 | [X] -1,016 |
| Viropharma Inc Com | Various | Various | 16,859 | 16,790 | 69 |
| Digital River Inc Com | 09/19/05 | 09/20/05 | 36,978 | 37,020 | [X] -42 |
| Jabil Circuit Inc Com | 09/26/05 | 09/27/05 | 30,519 | 30,170 | 349 |
| Computer Program And Systems Com | Various | Various | 69,242 | 69,090 | 152 |
| American Healthways Inc Com | 09/28/05 | 11/23/05 | 43,728 | 43,470 | 258 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

| | | | |
|---|---|---|---|
| 2. Net gain (loss) from above sales. | LOSS [ ] | 2. | 503 |
| 3. Gain from installment sales from PA Schedule D-1. | | 3. | |
| 4. Taxable distributions from C corporations. .............Enter total distribution [ ] | | | |
| ...................................................Minus adjusted basis [ ] | = | 4. | |
| 5. Net gain (loss) from the sale of 6-1-71 property from PA Schedule D-71. | LOSS [ ] | 5. | |
| 6. Net PA S corporation and partnership gain (loss) from your PA Schedule(s) RK-1 or NRK-1. | LOSS [ ] | 6. | |

**Taxable gain from selling a principal residence.** Complete and submit **Form PA-19.** Complete Columns (a) through (e) and enter your total gain on Line 8.

| (a) Address of residence | (b) Date acquired: Month/day/year | (c) Date sold: Month/day/year | (d) Gross sales price less expenses of sale | (e) Cost or Adjusted Basis of the property sold | (f) Gain or loss: (d) minus (e) |
|---|---|---|---|---|---|
| | | | | | |

| | | | |
|---|---|---|---|
| 7. Taxable gain from the sale of your principal residence. If you realized a loss on the taxable portion of the sale of your principal residence, enter a zero. | | 7. | |
| 8. Taxable distributions from partnerships from PA Schedule D (P/S). | | 8. | |
| 9. Taxable distributions from PA S corporations from PA Schedule D (P/S). | | 9. | |
| 10. Taxable gain from exchange of insurance contracts. | | 10. | |
| 11. **Total PA taxable gain (loss).** Add Lines 2 through 10. Enter on Line 5 of your PA-40. (If a net loss, fill in the box) | LOSS [ ] | 11. | 503 |

574701/10-25-05  CCH

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S.; and JOHN AND MARY ELLEN S., )
on behalf of their daughter, LEIGH ANN S., )     CIVIL ACTION NO. 04-150E
a minor                               )
         Plaintiffs             )     Honorable Sean J. McLaughlin
                                   )
        v.                        )
                                   )
GIRARD SCHOOL DISTRICT; ROBERT    )
SNYDER, Individually and in his capacity as   )
Principal of Rice Avenue Middle School; and   )
GREGORY YARBENET, a professional employee )
of the Girard School District            )
         Defendants         )

## DEFENDANT GREGORY YARBENET'S RESPONSE TO PLAINTIFF'S FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER THINGS IN AID OF EXECUTION DIRECTED TO GREGORY YARBENET

1. **IDENTIFICATION OF DEFENDANT**

Provide the Defendant's name; residential address(es) and telephone number(s); commercial address(es) and telephone number(s). Provide the Defendant's social security number. Provide the name, address, and tax identification number of any entity, including any for-profit or non-profit entity, in which Defendant maintains an ownership interest. State any other name used by Defendant within the six years prior to the date of your response. State the address of any residence Defendant has occupied within the six years prior to the date of your response.

**Response:**     Gregory J. Yarbenet
                  8080 Louisa Drive, #2 (2004-Current)    4560 North Creek Road (1998-2003)
                  Fairview, PA 16415                       Girard, PA   16417

                  Social Security No.: 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

                  See Also - Tax Returns.

2. **REAL ESTATE**

State whether the Defendant has an ownership or interest in any real estate anywhere in the United States. For each parcel, identify the property by setting forth a brief description thereof, including the lot and block number; the structure and lot size and type of construction; the location, including the state, county and municipality; the volume and page number of the official record thereof; and state further whether the defendant owns the property solely or together with any other person or persons and give the names and addresses of the other person(s). Supply the current value of the property and the basis for the valuation (estimate, tax

Exhibit 3

assessment, appraisal, etc.). If any of the above properties are mortgaged, supply the names and addresses of lenders, the date and amount of the mortgage, where it is recorded, the monthly payments and the balance now due. Identify any encumbrances (including liens) upon the property, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded. Also, supply the purchase date, purchase price and the name of the party from whom the property was purchased.

**Response:**     4560 North Creek Road, Girard, PA 16417, Erie County, PA. The property is not mortgaged and recordation information is unknown. The property was purchased 40 years ago with Defendant's first wife. Defendant maintains ownership with Elizabeth Yarbenet, his wife.

See Attached.

## 3.    TRANSFERS OF REAL ESTATE

State whether in the six years preceding to the date of these Interrogatories, the Defendant has transferred any real property either by sale, gift, exchange, or otherwise. Provide description of the real estate so transferred, the method or manner of transfer, the name of the person, firm or other entity to whom transferred, the consideration or amount received by the Defendant and the time and place of the transfer. Give state and county where transfer documents are recorded, and volume and page number of the recorded documents.

**Response:**     Defendant sold 4407 Candy Lane, Erie, PA, Erie County on 5/31/2001. Tax ID number is 33020112002300. Transfer was by deed, and the purchase price was $112,500.00. Property was transferred to Sambor, Eugeniusz Z., and is recorded at Deed Book 780-834 in the Erie County Recorder's Office.

## 4.    TRANSFERRED ASSETS AND GIFTS

If, in the six years preceding the date of your responses, the Defendant has transferred any assets (real property, personal property, chose in action, et al.) not covered by the immediate preceding interrogatory, to any person, and/or, if the Defendant has given any gift valued at more than $250.00, of any asset, including money, to any person; set forth, in detail, a description of the property, the type of transfer, the date of the transfer, the value of the asset on the date of transfer, and the name and address of the transferee or recipient.

**Response:**     N/a.

## 5.    AGREEMENTS

State whether the Defendant has any agreement involving the purchase of any real estate anywhere in the United States. Identify all parties to agreement and state whether or not any persons are joined with the Defendant in the agreement. If the said agreement is recorded, provide the state and county of recordation, with volume, page numbers and any other identifying number of the recorded documents.

Response:    N/a.

6.    **ACCOUNTS RECEIVABLE, DEBTS, NOTES & JUDGMENTS**

State the names and addresses of any and all persons whom the Defendant believes owes the Defendant money and set forth in detail the amount of money owed, the terms of payment and whether or not the Defendant has written evidence of this indebtedness, and if so, the location thereof. Also state if the matter is in litigation, and if so, give full details. If the Defendant holds a Mortgage or Judgment as security for any of these debts, provide the state and county where such mortgage is recorded or judgments is entered; and the volume and page number of the recorded documents. If the Defendant holds this Judgment or Mortgage jointly with any other person or persons, give the name and address of the other person(s).

**Response:**    N/a.

7.    **INSURANCE**

State whether or not the Defendant is the owner of any life insurance contracts. Identify the persons whose lives are so insured, the serial or policy number or numbers of said contracts, the death benefit, the loan value, the exact name and address of the insurance companies, the named beneficiary or beneficiaries, and the present address of the named beneficiary or beneficiaries. If the Defendant owns this insurance jointly with any other person or persons, give the name and address of the other person(s). State whether such policies are term, whole life or some other type of policy. State also whether such policies have any cash value and whether there exist any loans against such policies and, if so, state all amounts.

**Response:**    N/a.

8.    **GOVERNMENT, MUNICIPAL OR CORPORATE BONDS**

State whether the Defendant owns individually or jointly any corporate or governmental bonds. Identify the face amount, serial numbers, and maturity dates of these instruments. State the address of the present location of each instrument, and the name and address of any bank, saving and loan, or other entity or institution where the instrument is located. If the Defendant owns any of these Bonds jointly with any other person or persons, give the name and address of the other person(s). Identify the encumbrances (including liens) upon the bond, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded.

**Response:**    N/a.

9.    **SHARES OR INTEREST IN STOCKS, SHARES, AND OTHER INTERESTS**

Identify any stocks, shares or interest in any corporation, or unincorporated association or partnership interest, limited or general and state the location thereof owned in whole or in part by the Defendant. Identify the names and addresses of the organizations and the serial numbers of

the shares or stocks. If the Defendant owns any of the stocks, shares or interest jointly with any other party, give the name and address of the other party(ies), and the percentages owned, respectively, by the Defendant and the other party(ies). Identify any encumbrances (including liens) upon the shares or interest, the names and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded.

**Response:**    The Westaim Corporation, Serial # C08447, Alberta, Canada (3 Shares)
The Westaim Corporation, Serial #C03344, Alberta, Canada (2 Shares)
Agrium, Inc., Serial #Y1117966, Canada (6 Shares)

## 10.    **DEPOSITORY ACCOUNTS**

State whether or not the Defendant maintains any checking, savings or other depository account. Identify the name and location of the depository institution and the branch or branches thereof, the identification numbers of the account, and the amount or amounts the Defendant has in each account. If the Defendant maintains any of these jointly with another person, give the name and address of the other person(s). Give the dates of last deposits and of last withdrawals, as to each account. Identify any encumbrances (including liens) upon the account, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded.

**Response:**    Defendant maintains an account with the prison.

Defendant also maintains a joint checking, money market and savings account with his wife at PNC Bank, 710 East Main Street, Girard, PA 16417. The checking account is identified by account #64-1490-1455 with a balance of $6,723.27; the money market account is identified by account #69-5243-8314 with a balance of $233.15; the savings account is identified by account #60-0486-8912 with a balance of $2,721.03. None of these accounts are liened or otherwise encumbered. The most recent statement is attached with withdrawal, deposit and balance information.

## 11.    **SAFETY DEPOSIT BOXES**

State whether or not the Defendant maintains any safety deposit box. Identify the name and location of the institution, branch or branches, and the identification number or other designation of the box. Include a full description of the contents of each box. For each item of value, specify the items liquidity. Identify any encumbrances (including liens) upon the item, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded. State specifically the value of any cash or certified funds contained in any safety deposit box. If the Defendant maintains any of safety deposit box jointly with another person, give the name and address of the other person(s).

**Response:**    PNC Bank, 710 Main Street East, Girard, PA 16417. Containing Title to North Creek, and wills. Deposit box is maintained jointly with his wife.

12.    <u>INTERESTS IN RETIREMENT SAVINGS PLANS, INCLUDING IRA, ERISA, KEOGH, OR OTHER PENSION OR PROFIT SHARING PLANS</u>

State whether or not the Defendant owns an interest in any retirement savings plans, including any IRA, ERISA, Keogh, or other pension or profit sharing plan. Identify the name and location of the institution or firm (give specific branch or branches) which administers the plan, or otherwise holds the plan's assets. Specify the account number of the plan. Identify any encumbrances (including liens) upon the plan's assets, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded. State specifically the value of the plan's assets as of the date of your response, and (if less than 100% of the value of the plan's assets) the value of the percentage of the plan's assets owned by the Defendant. If the Defendant's interest is jointly held with another person or persons, give the name, address, telephone number, social security number, and tax identification number of the other person(s).

**Response:**    Defendant has a pension stemming from him employment with Girard School District. The address of the administrator of the plan and its account number are unknown. The pension is not encumbered and Defendant is unaware of the value of the pension's assets as of the date of response.

13.    <u>INTERESTS IN PARTNERSHIPS OR JOINT VENTURES</u>

State whether or not the Defendant owns an interest in any partnership or joint venture. Identify the name, location, and tax identification number of the partnership or joint venture. Identify every other party to the partnership or joint venture, and provide the name, address, telephone number, social security number, and tax identification number of the other party(ies). Identify any encumbrances (including liens) upon the partnership or joint venture, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded. State specifically the value of the partnership or joint venture's assets as of the date of your response, and the value of the partnership's or joint venture's assets owned by the Defendant.

**Response:**    N/a.

14.    <u>EQUITABLE OR FUTURE INTERESTS, LIFE ESTATES, AND RIGHTS OR POWERS EXERCISABLE FOR THE BENEFIT OF DEFENDANT (OTHER THAN THOSE LISTED IN RESPONSE TO INTERROGATORIES 2, 3, AND 4)</u>

State whether or not the Defendant owns an interest in any equitable or future interest, life estate, or right or power exercisable for Defendant's benefit. Identify the interest, right, or power; its value as of the date of your response; any encumbrances (including liens) upon the interest, right or power (include in your response the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded); the name, address, telephone number, social security number, and tax identification number of any party

holding a reversionary interest in the Defendant's interest; any contingencies which limit, restrict, or otherwise affect the value of the interest.

**Response:**    N/a.

15.    **ANNUITIES**

State whether or not the Defendant owns an interest in any annuity.  Identify the name and location of the institution or firm (give specific branch or branches) which administers the annuity.  Specify the account number of the annuity.  Identify any encumbrances (including liens) upon the annuity, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded.  State specifically the cash surrender value of the annuity as of the date of your response, and (if less than 100% of the value of the annuity) the value of the percentage of the annuity owned by the Defendant.  If the annuity is jointly held with another person or persons, give the name, address, telephone number, social security number, and tax identification number of the other person(s).

**Response:**    N/a.

16.    **PATENTS, COPYRIGHTS, TRADEMARKS, TRADE SECRETS OR OTHER INTELLECTUAL PROPERTY**

State whether or not the Defendant owns an interest in any patent, copyright, trademark, trade secret, or other item of intellectual property.  Identify the property and any documents which evidence the Defendant's ownership interest in the property.  Identify any encumbrances (including liens) upon the plan's assets, the name and address of the encumbrance holder, the present balance owing on that encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded.  State specifically the value of the property as of the date of your response, and (if less than 100% of the value of the property) the value of the percentage of the property owned by the Defendant.  If the property is jointly held with another person or persons, give the name, address, telephone number, social security number, and tax identification number of the other person(s).

**Response:**    N/a.

17.    **CONTINGENT AND NON-CONTINGENT INTERESTS IN ESTATE OF A DECEDENT, DEATH BENEFIT PLAN, OR TRUST**

State whether or not the Defendant owns an interest in any estate of a decedent, death benefit plan, life insurance policy, or trust.  Identify the interest; any encumbrances (including liens) upon the interest (the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded); any contingencies which limit, restrict, or otherwise affect the value of the interest; the name, address, telephone number, social security number and tax identification number of any other party with whom the interest is jointly held.  State specifically the value of the Defendant's interest as of the date of your response, including the cash surrender value.

6

Response:    N/a.

18. **OTHER CONTINGENT AND UNLIQUIDATED CLAIMS OF EVERY NATURE INCLUDING TAX REFUNDS, COUNTERCLAIMS OF THE DEFENDANT, AND RIGHTS TO SETOFF CLAIMS**

State whether or not the Defendant owns an interest in any contingent or unliquidated claims of any nature, including tax refunds, counterclaims of the Defendant, and rights to setoff claims. Identify the interest; any encumbrances (including liens) upon the interest (the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded); any contingencies which limit, restrict, or otherwise affect the value of the interest; the name, address, telephone number, social security number and tax identification number of any other party with whom the interest is jointly held. State specifically the value of the Defendant's interest as of the date of your response, and (if less than 100% of the value of the property) the value of the percentage of the property owned by the Defendant.

**Response:**    N/a.

19. **TANGIBLE NON-REALTY FOR PERSONAL OR BUSINESS USE**

Identify all tangible property for personal or business-related use owned by Defendant. Include a full description of all machinery, equipment, farming equipment, tools, office equipment, supplies, inventory, jewelry, furs, antiques, rare or collectible items, art objects, furniture, fixtures, furnishings, appliances, musical instruments, wearing apparel, firearms, sporting goods, photographic equipment, hobby equipment, and any other item of property, giving full value and present location of each. State specifically the value of the property as of the date of your response, and (if less than 100% of the value of the property) the value of the percentage of the property owned by the Defendant. Identify all encumbrances (including liens) on each item of property, the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the encumbrance. State where and when the encumbrance was recorded. If the Defendant owns any personal property jointly with any other person or persons, give the name and address of the other person(s).

**Response:**    N/a.

20. **RENTED PROPERTY**

State whether any of the property of the Defendant is rented to, leased to or otherwise in possession of a third person. Identify each item of property, including a full description of the property; the name and address of the person, firm, or other entity who has possession of the property; the circumstances and reason(s) why the property is in possession of the third person; the consideration or payment received by the Defendant; the name and address of the person who receives the rents or other consideration on behalf of the Defendant; and the term of any lease which conveys a possessory right to the property. Identify all encumbrances (including liens) on each item of property, the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the

encumbrance. State where and when the encumbrance was recorded. If the Defendant owns the property jointly with any other person or persons, give the name and address of the other person(s).

**Response:**    4560 North Creek Road, Girard, PA 16417, Erie County, PA. Defendant uses this property for rental income and received rents in the amount of $5,300.00 in 2005. However, after taxes, Defendant merely earned $631.00 in rental real estate income.

See Also - Tax Returns.

21.    **MOTOR VEHICLES**

State whether or not the Defendant owns or has any rights in any motor vehicles. Include a full description of each such motor vehicle including color, model, title number, serial number, registration or license plate number, and state or states in which vehicle is registered. Also show the name or names in which each motor vehicle is registered, the present value of each motor vehicle and their present location and place of regular storage, garaging or parking. State also whether or not there are any encumbrances (including liens) on those motor vehicles and if so, the name and address of the encumbrance holder, the date of the encumbrance, the original amount of the encumbrance, the present balance of the encumbrance, the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance or lien was recorded. If the Defendant does not own the vehicle, state the extent of the Defendant's rights in and to such vehicles.

**Response:**    N/a.

22.    **ACCOUNTS PAYABLE, LOANS PAYABLE, DEBTS, NOTES WHICH THE DEFENDANT OWES TO SOMEONE ELSE**

State the names and addresses of any and all persons who claims to be owed money by the Defendant, regardless of the basis for payment asserted by the purported creditor. Identify the amount claimed. Identify any suits, actions or legal proceedings of any kind against the Defendant which are pending or undetermined. State the names of all parties to such proceedings, the nature of such proceedings, the status of such proceedings, the court in which such proceedings are taking place. It is not necessary to duplicate the Mortgage information given in response to Interrogatories 2, 3, or 4, nor the encumbrance information required by any other interrogatory herein.

**Response:**    N/a.

23.    **JUDGMENTS**

Identify any judgment against the Defendant which appeared as a recorded judgment at any time during the past 48 months. Identify nature and amount of judgment, the party in whose

favor the judgment is held, and state and county where judgment was recorded. Identify any amounts paid by Defendant or third party on Defendant's behalf in full or partial satisfaction of judgment. Identify paying party. If judgment was not recorded, explain reasons for such non-recordation.

**Response:**     N/a.

## 24.     **EXECUTION PROCEEDINGS AND PROCEEDINGS IN AID OF EXECUTION**

Identify all execution proceedings and proceedings in aid of execution now pending on any of the Judgments identified in your responses to any of these interrogatories. Provide name, address, telephone number of all parties to the proceedings, and the attorneys of any party to the execution. Identify the name and address of the court having jurisdiction over the proceedings and the docket number of the proceedings.

**Response:**     N/a.

## 25.     **MEMBERSHIP IN SOCIAL, ATHLETIC, OR FRATERNAL ORGANIZATIONS**

State whether the Defendant is a member of any social, athletic, or fraternal organization. Provide the name, address, and telephone number of the organization. State the amount of any dues paid or owed by the Defendant during the two years prior to the date of your responses.

**Response:**     N/a.

## 26.     **INCOME OF DEFENDANT, SPOUSE, AND DEFENDANT'S BUSINESS ENTITIES**

For the six years preceding your responses, state the total salary or income, per year, from all sources, business or non-business related, received by the Defendant, the Defendant's spouse, or any business entity which the Defendant owns in whole or part. Include all items of value received regardless of form (cash, in-kind contributions, exchanges, et al.) which by law were required to be reported to any federal or state taxing authority. Identify the sources of income (names, addresses, telephone number, tax identification number) of every income source, the dates on which the income was received, and the value of the income received.

**Response:**     See tax returns.

## 27.     **DEFENDANT'S OCCUPATION**

State the Defendant's current occupation. State any other occupation which Defendant has had at any time during the six years prior to the date of your responses.

**Response:**     Retired School teacher.

## 28.     **DEFENDANT'S MARITAL AND FAMILIAL STATUS:**

A.    State whether the Defendant is currently married. State the name, address, telephone number, social security number, and tax identification number of Defendant's spouse. State whether at any time during the six years preceding the date of your response the Defendant was married and living in a community property state. State the name, address, and telephone number of all persons to whom Defendant has ever been married.

**Response:**    Defendant is currently married to Elizabeth J. Yarbenet, SS# 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, with the same address as Defendant. Mrs. Yarbenet's phone number is (814) 450-1313. Defendant was previously married to a Trudy Yarbenet, who died in 1986.

B.    State whether the Defendant's spouse is employed outside the home. State the occupation of the spouse, and any other occupation which the spouse has had at any time during the six years prior to the date of your responses.

**Response:**    Mrs. Yarbenet is a homemaker. She does engage in painting from time to time.

C.    State the names, addresses, and telephone numbers of each child and each dependent of the Defendant.

**Response:**    Sean Yarbenet, same address as Defendant.

D.    State the names of each person with whom Defendant shares a residence, or has shared a residence within the six years prior to the date of your responses.

**Response:**    Elizabeth J. Yarbenet.


29.    **PROPERTY IN PAWN**

Identify every item of property that the Defendant has in pawn; the redemption value of the item; the location of the item; and the name, address and telephone number of the person or entity who or which is holding the item in pawn.

**Response:**    N/a.

30.    **DEFENDANT'S WILL**

State whether the Defendant has made a will, the date of such instrument, its location, all property devised in the will, and the named beneficiaries, recipients, or devisees.

**Response:**    Copy attached.

31.    **CREDIT CARDS**

As to each credit card currently issued to the Defendant, state the name of the entity which issued the card, the name of the account holder, the account number, and the balance owed as of the date of your responses.

**Response:**     Chase Visa with zero balance.

32.    **OTHER ASSETS**

Identify any other asset owned in whole or in part by the Defendant which does not appear in the preceding Interrogatories or your responses thereto. Identify the asset, its value as of the date of your response; any encumbrances (including liens) upon the asset (include in your response the name and address of the encumbrance holder, the present balance owing on that encumbrance and the transaction which gave rise to the existence of the encumbrance, and where and when the encumbrance was recorded); the name, address, telephone number, social security number, and tax identification number of any party holding a joint interest in the asset; and any contingencies which limit, restrict, or otherwise affect the value of the asset.

**Response:**     N/a.

33.    Identify each and every entity from whom you have borrowed money from 1998 to the present. State the date of the loan, or loan application, and the amount of the loan sought.

**Response:**     N/a.

34.    Identify each and every entity with whom you have had a business relationship, provided services to, or received remuneration in any form, including income, contributions, in kind payments, from 1998 through the present.

**Response:**     Girard School District
                          Staley Mechanical Contracting

35.    Identify all persons employed by the National Aeronautic & Space Administration with whom you had contact, including any persons who directed your services, or with whom you communicated concerning activities for NASA. Provide the names, titles, and last known addresses of each person whom you have identified.

**Response:**     Unknown at this time. Defendant will supplement this answer with all information that he recalls or discoveres.

36.    Describe any tangible objects which you have received from NASA in connection with providing consulting services, advice, or any other activity related to the NASA's activity.

**Response:**     None. Any items which Defendant had were left in the school.

**Request for Production of Documents**

11

1.      Produce any documents which are responsive to the matters set forth in Interrogatory 1, above, or which otherwise support your answers to same.

**Response:**      See attached.

2.      Produce any documents which are responsive to the matters set forth in Interrogatory 2, above, or which otherwise support your answers to same.

**Response:**      See attached.

3.      Produce any documents which are responsive to the matters set forth in Interrogatory 3, above, or which otherwise support your answers to same.

**Response:**      See attached.

4.      Produce any documents which are responsive to the matters set forth in Interrogatory 4, above, or which otherwise support your answers to same.

**Response:**      N/a.

5.      Produce any documents which are responsive to the matters set forth in Interrogatory 5, above, or which otherwise support your answers to same.

**Response:**      N/a.

6.      Produce any documents which are responsive to the matters set forth in Interrogatory 6, above, or which otherwise support your answers to same.

**Response:**      N/a.

7.      Produce any documents which are responsive to the matters set forth in Interrogatory 7, above, or which otherwise support your answers to same.

**Response:**      N/a.

8.      Produce any documents which are responsive to the matters set forth in Interrogatory 8, above, or which otherwise support your answers to same.

**Response:**      N/a.

9.      Produce any documents which are responsive to the matters set forth in Interrogatory 9, above, or which otherwise support your answers to same.

**Response:**      See attached.

10.     Produce any documents which are responsive to the matters set forth in Interrogatory 10, above, or which otherwise support your answers to same.

**Response:**    See attached.

11.    Produce any documents which are responsive to the matters set forth in Interrogatory 11, above, or which otherwise support your answers to same.

**Response:**    See attached.

12.    Produce any documents which are responsive to the matters set forth in Interrogatory 12, above, or which otherwise support your answers to same.

**Response:**    See attached.

13.    Produce any documents which are responsive to the matters set forth in Interrogatory 13, above, or which otherwise support your answers to same.

**Response:**    N/a.

14.    Produce any documents which are responsive to the matters set forth in Interrogatory 14, above, or which otherwise support your answers to same.

**Response:**    N/a.

15.    Produce any documents which are responsive to the matters set forth in Interrogatory 15, above, or which otherwise support your answers to same.

**Response:**    N/a.

16.    Produce any documents which are responsive to the matters set forth in Interrogatory 16, above, or which otherwise support your answers to same.

**Response:**    N/a.

17.    Produce any documents which are responsive to the matters set forth in Interrogatory 17, above, or which otherwise support your answers to same.

**Response:**    N/a.

18.    Produce any documents which are responsive to the matters set forth in Interrogatory 18, above, or which otherwise support your answers to same.

**Response:**    N/a.

19.    Produce any documents which are responsive to the matters set forth in Interrogatory 19, above, or which otherwise support your answers to same.

**Response:**    N/a.

20.    Produce any documents which are responsive to the matters set forth in Interrogatory 20, above, or which otherwise support your answers to same.

**Response:**    N/a.

21.    Produce any documents which are responsive to the matters set forth in Interrogatory 21, above, or which otherwise support your answers to same.

**Response:**    N/a.

22.    Produce any documents which are responsive to the matters set forth in Interrogatory 22, above, or which otherwise support your answers to same.

**Response:**    N/a.

23.    Produce any documents which are responsive to the matters set forth in Interrogatory 23, above, or which otherwise support your answers to same.

**Response:**    N/a.

24.    Produce any documents which are responsive to the matters set forth in Interrogatory 24, above, or which otherwise support your answers to same.

**Response:**    N/a.

25.    Produce any documents which are responsive to the matters set forth in Interrogatory 25, above, or which otherwise support your answers to same.

**Response:**    N/a.

26.    Produce any documents which are responsive to the matters set forth in Interrogatory 26, above, or which otherwise support your answers to same.

**Response:**    See attached.

27.    Produce any documents which are responsive to the matters set forth in Interrogatory 27, above, or which otherwise support your answers to same.

**Response:**    See attached Income Tax Returns.

28.    Produce any documents which are responsive to the matters set forth in Interrogatory 28, above, or which otherwise support your answers to same.

**Response:**    See attached.

29.    Produce any documents which are responsive to the matters set forth in Interrogatory 29, above, or which otherwise support your answers to same.

**Response:**    N/a.

30.    Produce any documents which are responsive to the matters set forth in Interrogatory 30, above, or which otherwise support your answers to same.

**Response:**    See attached.

31.    Produce any documents which are responsive to the matters set forth in Interrogatory 31, above, or which otherwise support your answers to same.

**Response:**    N/a.

32.    Produce any documents which are responsive to the matters set forth in Interrogatory 32, above, or which otherwise support your answers to same.

**Response:**    N/a.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By:_____

Edward J. Betza, Esquire (Pa.S.Ct. #65529)
Elliott J. Ehrenreich, Esquire(Pa.S.Ct. #201687)
Attorneys for Defendant, Gregory J. Yarbenet
150 East 8th Street
Erie, Pennsylvania  16501-1269
(814) 456-4000

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

STACY S.; and JOHN AND MARY ) 
ELLEN S., on behalf of their daughter, ) CIVIL ACTION NO. 04-150E
LEIGH ANN S., a minor )
 )
       Plaintiff ) Honorable Sean J. McLaughlin
 )
       v. )
 )
GIRARD SCHOOL DISTRICT; )
ROBERT SNYDER, Individually )
and in his capacity as Principal of )
Rice Avenue Middle School; and GREGORY )
YARBENET, a professional employee )
of the Girard School District )
 )
       Defendants. )

## CERTIFICATE OF SERVICE
## OF DEFENDANT, GREGORY J. YARBENET'S, RESPONSES TO PLAINTIFFS' FIRST SET OF INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS AND OTHER THINGS IN AID OF EXECUTION DIRECTED TO GREGORY YARBENET

Undersigned counsel hereby certifies that Defendant Gregory Yarbenet's Responses to

Plaintiffs' First Request for Production of Documents was served on Edward A. Olds, Esquire,

by mailing same to him by United States Mail, First Class, to his office at 1007 Mt. Royal

Boulevard, Pittsburgh, Pennsylvania 15223 on May 24 , 2006.

Respectfully submitted,

ELDERKIN, MARTIN, KELLY & MESSINA

By: _____
    Edward J. Betza, Esquire (Pa.S.Ct. #65529)
    150 East Eighth Street
    Erie, Pennsylvania 16501
    (814) 456-4000

# EDWARD A. OLDS

*Attorney at Law*

1007 MOUNT ROYAL BOULEVARD • PITTSBURGH, PA 15223
TELEPHONE: (412) 492-8975
FAX: (412) 492-8978

May 23, 2006

**VIA FACSIMILE AND MAIL**

Edward J. Betza, Esquire
150 East Eighth Street
Erie, PA 16501

    RE:  **Stacy S. et al. v Girard School District, et al.**

Dear Ed:

    Please let me know when I can receive the responses to the discovery requests which we served on you.

Sincerely,

Edward A. Olds

EAO/jm
cc:  Plaintiffs

*exhibit 4*

# EDWARD A. OLDS

*Attorney at Law*

1007 MOUNT ROYAL BOULEVARD • PITTSBURGH, PA 15223
TELEPHONE: (412) 492-8975
FAX: (412) 492-8978

May 31, 2006

**VIA FACSIMILE AND MAIL**

Edward J. Betza, Esquire
150 East Eighth Street
Erie, PA 16501

RE: **Stacy S et al. v Girard**

Dear Mr. Betza:

I have reviewed in some detail the information that your clients have provided in Answers to our discovery. I enclose copies of PA Schedule D from Mr. Yarbenet's 2002 through 2005 tax returns for your review. These schedules seem to indicate that in 2002 Yarbenet sold $1.3 million worth of stock. Sales of securities continue to be reported through 2005. In Interrogatory No. 4, we ask for information concerning transfers of assets, the Answer was "N/A." Obviously, the tax returns suggest that Yarbenet transferred stock or other investment securities every year since 2002. I want your client to provide me with any information concerning the transfers of those assets promptly.

Additionally, in the past we have discussed the sale of real estate in Arizona. This transfer is not disclosed in the Answers to Interrogatories either. All documents relative to the transfer of assets should be produced.

Finally, in the Answers to Interrogatories, Yarbenet claims he does not own any stocks or investments or equities, currently. However, this is difficult to believe since, every year from 2002 through 2005, reports of sales of securities or assets are recorded on his tax return. Consequently, this suggests that Yarbenet continues to own stock. I want Answers for Interrogatory No. 9. Additionally, we are waiting for the information concerning Mr. Yarbenet's contacts with NASA. As you know, he testified in his deposition of the sales of these assets seem to contradict the information that you have provided us.

Edward J. Betza, Esquire
May 31, 2006
Page 2


        Obviously, we are interested in the disposition of the $1.3
million in sales of stock or other equities.  I hope you and I can
talk about this.  Therefore, I would like to talk to you in the
next few days to find out when we can have this information.


                          Sincerely,



                          Edward A. Olds


EAO/jm
Enclosure

```
 1              IN THE UNITED STATES DISTRICT COURT
             FOR THE WESTERN DISTRICT OF PENNSYLVANIA
 2

 3   STACY S; and JOHN and      :
     MARY ELLEN S., on behalf   :
 4   of their daughter, LEIGH   :
     ANN S., a minor,           :
 5             Plaintiffs        :
                                :
 6        vs.                    :   Civil Action No. 04-150E
                                :
 7   GIRARD SCHOOL DISTRICT;    :
     ROBERT SNYDER,             :   HONORABLE SEAN J. MCLAUGHLIN
 8   Individually and in his    :
     capacity as Principal of   :
 9   the Rice Avenue Middle     :
     School; and GREGORY        :
10   YARBENET, a professional   :
     employee of the Girard     :
11   School District,           :
               Defendants       :   Jury Trial Demanded
12

13

14

15        Deposition of GREGORY YARBENET, taken before and
     by Carol A. Holdnack, RPR, Notary Public in and for
16   the Commonwealth of Pennsylvania, on Monday,
     July 25, 2005, commencing at 10:00 a.m., at the
17   Westmoreland County Courthouse, Greensburg, PA.

18

19   For the Plaintiffs:
         Edward A. Olds, Esquire
20       1007 Mount Royal Boulevard
         Pittsburgh, PA 15223
21
     For the Defendants Girard School District and Robert Snyder:
22       Richard A. Lanzillo, Esquire
         Knox McLaughlin Gornall & Sennett, P.C.
23       120 West Tenth Street
         Erie, PA 16501
24
              Reported by Carol A. Holdnack, RPR
25             Ferguson & Holdnack Reporting, Inc.
```

Exhibit 5

1  school students?

2      A.    High school and middle.

3      Q.    What period of time did you teach high school

4  students?

5      A.    It was at the very beginning.  The first year was

6  ninth grade.

7      Q.    And after that, you taught middle school students?

8      A.    It was called junior high.  It was seventh and

9  eighth grade.  And then eventually sixth, seventh and eighth

10 grade.

11     Q.    Besides working at the Girard School District, did

12 you have any other jobs?  I mean, did you have jobs that you

13 worked at in addition to working at the Girard School

14 District?

15     A.    I had worked for different parachute companies.  I

16 worked for -- at the Johnson Space Center for NASA.

17     Q.    What parachute companies did you work for?

18     A.    Glide Path International.

19     Q.    And when did you work there?

20     A.    That would have been in the '80s.

21     Q.    And did you work for any other parachute

22 companies?

23     A.    Yes.  Flight Concepts.

24     Q.    Flight?

25     A.    Flight Concepts.

1        Q.    Flight Concepts.    And when did you work for Flight
2    Concepts?
3        A.    In the '90s.
4        Q.    And what was the nature of your employment?    Were
5    you a consultant?
6        A.    Yes, I was a design engineer consultant.    And
7    sometimes a frightened test jumper.
8        Q.    And sometimes what?
9        A.    Frightened test jumper.
10       Q.    And can you tell me a little bit about how you --
11   when you first developed an interest in the parachutes and
12   doing that kind of work.
13       A.    I can give you the exact date.
14       Q.    Okay.
15       A.    January 1962.    They had the Erie Winter Carnival,
16   and nobody would go up in the parasail on the frozen bay.
17   And guess who volunteered to go up in it.
18       Q.    Okay.
19       A.    It was me.
20       Q.    And then after that, you -- that became an
21   avocation of yours?
22       A.    It was a hobby, yeah, that turned into a
23   consulting job eventually.    Because I invented some of the
24   things that all skydivers use.
25       Q.    Do you have patents?

1      A.   I was part of a patent for a company, yes, back in

2   the early '70s.  Which is long gone.  Because patents are

3   only good for like -- what is it, like 17 years, something

4   like that.

5      Q.   What was the name of that company?

6      A.   Pioneer Parachute Company.  Manchester,

7   Connecticut.

8      Q.   When you worked for these companies, did you --

9   was it work that you did in the summertime or did you work

10  year-round, your consulting work?

11     A.   That was summertime.  NASA, when they needed a

12  consultant, I was pulled out at times to -- during the year

13  to go down there, to work with the shuttle program.

14     Q.   What did you do for NASA?

15     A.   They had something called the X38.  Which was the

16  crew retrieval system for the International Space Station.

17  And I was troubleshooting the parachute system to bring them

18  back, the astronauts back to the Earth.

19     Q.   And what years did you work for NASA?

20     A.   It would have been mid to late '90s.

21     Q.   And that would have been in the Johnson Space

22  Center in Houston?

23     A.   Yeah.  With travel around the United States at

24  different centers.  Wherever they needed me, they sent me.

25     Q.   Your relationship with NASA, that was a -- you had

1   a consulting contract with NASA?

2       A.    It was a unique thing.  Because being a school

3   teacher, the way it came about was that I was one of 25

4   teachers picked in the United States to go through astronaut

5   training.  And when I was down there, one of the engineers

6   came across me and noticed my name.  And he says, you're the

7   guy that invented something back in the '70s, didn't you,

8   for Ram Air Parachutes.  And I said, yeah, how did you know

9   that.  He said, we're looking for you.

10      And he pulled me out of the class for the training

11  program, and took me over into their office and asked me if

12  I would be willing to look at some of their problems, try to

13  help them out.  And I told them that I would do it only if I

14  was not paid for it.

15      And the payment was, from NASA, that I could

16  supply my classroom with space technology, which did occur.

17  And NASA supported a lot of endeavors that I took up in my

18  classroom.  So I was not paid for it.

19      Q.    Okay.  And when during the year would you work for

20  NASA?

21      A.    Mainly summertime, but I think -- I would have to

22  remember, because there were so many things going on.  But I

23  think I left one time for a few days during the school year,

24  but I would have to -- I couldn't even remember.  Because

25  I've been so many places so many times.  But I would say

1    95 percent of the time was definitely June, July or August.

2    They respected that.

3        Q.   And what would you do?  You would go down there

4    for a couple weeks, or a couple months?

5        A.   It depends.  It was -- the longest was probably

6    two weeks.  I interacted with the astronauts to train them

7    how to use the escape system, and looked at the parachute

8    systems and tried to -- they were having troubles with it.

9    And I worked along with the Apollo engineers on the space

10   shuttle return.

11       Q.   When you worked there, did you have a supervisor

12   or someone that you reported to directly?

13       A.   Yes.

14       Q.   Who was that?

15       A.   The chief aerospace engineer of NASA was Rick

16   Barton, B-A-R-T-O-N.  And that's who I was directly

17   responsible to.

18       Q.   Okay.  And you have been married twice; is that

19   right?

20       A.   Correct.

21       Q.   What was your first wife's name?

22       A.   Trudy, T-R-U-D -- that was actually her nickname.

23   It was Gertrude.  Official legal name, Gertrude.

24       Q.   And when did you marry her?

25       A.   January 18th, 1969.

1      Q.   And so you had never met Elizabeth before your

2  first wife died then; is that right?

3      A.   We had not actually personally met.  I had

4  recognized her after a while that -- through an organization

5  that we had paths -- you know, our paths had crossed.   But

6  never spoke to each other, never talked, anything like that.

7      Q.   Okay.  Then you had one child with Elizabeth; is

8  that right?

9      A.   Correct.

10     Q.   And what's your son's name?

11     A.   Sean.

12     Q.   Sean.  When was he born?

13     A.   December 14th, 1989.

14     Q.   Do you have a pilot's license?

15     A.   No.

16     Q.   And aside from the one patent that we discussed,

17 you don't have an interest in any other patents?

18     A.   Do I have any other patents?

19     Q.   You don't -- yes.

20     A.   No.

21     Q.   Do you have any other patents?

22     A.   No.  And that was -- that was actually a company

23 patent.  Because when you work for them -- you know, I was

24 only like 19 or 20.  They said, whatever you come up with is

25 ours.

1    Q.   Okay.

2    A.   That's what I have.

3    Q.   Now, did you -- are you responsible for any other

4 inventions?  You worked with NASA and several other

5 companies.  Are you responsible for any other inventions?

6    A.   No.  No patents, no inventions.  I would use the

7 word modifications.

8    Q.   And can you tell me where you reside -- where you

9 resided before you were incarcerated.

10    A.   I was in Girard.

11    Q.   And what was the address?

12    A.   4560 North Creek.

13    Q.   And how long had you lived there?

14    A.   Since 1977.  July.

15    Q.   Did you build that house?

16    A.   My wife and I rebuilt a cottage.  It was a cottage

17 originally when we bought it.

18    Q.   Now, you also -- you do fly a --

19    A.   Powered parachute.

20    Q.   Powered parachute.

21    A.   I'll help you with that.

22    Q.   And when did you start doing that?

23    A.   1985.

24    Q.   And is that something that -- can you take off

25 from any place with a powered parachute, or do you have to

1  point in your teaching career you started having students

2  come over to your house; is that right?

3      A.   They came over voluntarily.  Sometimes the first

4  day of summer vacation, I would go outside, and they're in

5  my front yard asking what to do.  I'll never forget that.

6      Q.   Did you have parties at your house or

7  get-togethers where students came?

8      A.   There was only a few actual parties with students.

9  And that was directly related to the TV studio.

10      Q.   Okay.

11      A.   Other than that, there was -- there was so many

12  kids in the neighborhood, and they knew where I lived.  And

13  they would stop over and want to go fishing over across in

14  the creek or, you know, throw a ball.  Or I used to do a lot

15  of kite work, and I used to make a lot of kites for kids.

16  And the kids would come over, and I would just give them to

17  them.  Does that help?

18      Q.   Right.  How did you get interested in the TV

19  studio?

20      A.   Basically, my work for NASA.  When I had been

21  working for them, there was a lot of high-tech availability.

22  And I remember seeing that the -- they had videoconferencing

23  systems in place, that they could go anywhere in the world

24  instantly.  And I thought about it.  And to the best of my

25  memory -- now, this is, you know, I think I suggested it for

1    the school.  I'm not sure if it came up, if I suggested it

2    or somebody else did, but.

3              I had access to -- more motivation to make our

4    school updated a little bit.  It was, you know, a brand new

5    middle school.  And they were looking for ideas.  And I, in

6    a sense, volunteered to do that because of what technology I

7    had seen existing already at the NASA level.

8        Q.    I forgot to ask you when you -- your -- you

9    started at Girard back in -- you said '68 or '69?

10       A.    '69.

11       Q.    '69.  Who was the -- the last principal that you

12   worked under was Bob Snyder; is that right?

13       A.    Correct.

14       Q.    Do you remember who the principal was before Bob

15   Snyder?

16       A.    Wow, this is going to be like asking me all the

17   presidents in order.  Thanks a lot.

18       Q.    I figured we would go backwards maybe, if that

19   would make it easier.

20       A.    My recallability is like my history grades.

21       Q.    Okay.

22       A.    You know, I can remember my first one in '69, was

23   Mr. Golden.

24       Q.    Golden.

25       A.    And I remember Dr. Leszek (phonetic) was the next

1    or 24 was there?

2        A.   Oh, you mean into my room at school?

3        Q.   Yeah.

4        A.   Basically, they wouldn't be there very long.  But

5    they were keeping up on what NASA was sending me.  Because

6    we were receiving -- some of the models, the kids couldn't

7    believe that they were worth over $50,000.  And they were

8    actually used in the designs of the shuttle.

9             And I had the only model of the shuttle that was

10   actually used in the wind tunnel to test the wing design.

11   And I asked them how much that little model was worth when

12   they sent it.  And they said, oh, 50,000, 60,000.  And I

13   said oh.  But that's how I was paid, you know, from that

14   work that I was doing as a consultant.  That was the

15   agreement.

16            And they would call, you know, anything new come

17   in, anything happening.  And I would tell them.  And they

18   would show up, and take a little bit of footage for the news

19   that night or the next night.  The kids would love to get in

20   on it because they would see themselves on TV.

21       Q.   Okay.  This stuff that NASA sent, did that remain

22   at the school or did you take that when you left?

23       A.   I had to sign for it.  So, technically, it

24   belonged to me.

25       Q.   Is it returned to NASA now, or do you still have

1  it?

2      A.    It's in my possession.  I had to return the lunar

3  samples.  We actually had lunar samples from Apollo 17.

4  Harrison Schmitt was the Apollo 17 astronaut.  And I had a

5  case of moon rocks.  It had to be locked down in the safe

6  every night.  And those had to go back, obviously.

7      Q.    Okay.

8      A.    But that was one of the nicest things I think they

9  did for us.  Because when we studied about the moon, I mean,

10 actually, the whole pieces of the moon, you know, the

11 kids -- my homework assignments -- I never really gave

12 homework.  But I told them, I says, when you go out and look

13 at the moon tonight, remember you were holding a piece of

14 that.

15     Q.    Okay.

16     A.    And to add to that, Mrs. Shaffer, Stacy's mom, she

17 had a safe at her home.  And she offered to keep them there.

18 And she did store them for me.  Because it was a fireproof

19 safe.  I didn't have one at home.  So Mrs. Shaffer actually

20 had access to that.

21     Q.    When you would take the field trips to the TV

22 studios or TV station, how would you get there?

23     A.    I would have them sign permission slips from the

24 parents.  And I would pick them up and take them.

25     Q.    Would this be on school days?

1  parent could enter your classroom and see what's going on
2  and see what's up on the walls.
3       A.   Oh, yeah.
4       Q.   And how you had your classroom set up.
5       A.   Yeah.
6       Q.   Do you know whether Leigh Ann's parents or Stacy's
7  parents ever attended those parent/teacher nights?
8       A.   See, I don't remember Stacy's mom.  It would have
9  been her mom, because usually dad was watching Kacie.  I
10 don't recall anything in sixth grade, even though
11 Mrs. Werling made reference to that.  And I was trying to
12 remember back when that incident came up about getting her
13 into the TV studio.
14       Leigh Ann's parents, they were very active.  And I
15 kind of recall them being there.  Because, again, in one
16 night you would have -- we would keep a list like that on a
17 legal paper, and it would be full on both sides.  So you
18 would see a lot of parents.
19       Q.   So dozens of parents would be coming through the
20 classroom?
21       A.   Easily, yes.  And all asking questions.  Some
22 would come up and hug me, pat me on the back, and things
23 like that.
24       Q.   Looking at the students' work on the wall?
25       A.   Yeah.  My room was quite a display of scientific

1    things.    Like from NASA, we had stuff hanging from the

2    ceiling, and display cases, rocks.    Like I said, all kinds

3    of stuff.

4        Q.    Photographs of students at different events?

5        A.    Oh, yeah.    Oh, yeah.

6        Q.    And, to your knowledge, do you know whether any of

7    the parents during these student/teacher nights or on other

8    occasions would go and look at the TV studio?

9        A.    I had to be down in that room, so I don't know if

10    they went up there or not.    That's a good -- I don't

11    remember that, because I had to stay in my room downstairs,

12    which was down below.

13        Q.    Did any parent ever express any concerns in your

14    presence regarding what was on the walls, pictures, displays

15    anything of that nature?

16        A.    Absolutely not.    I actually received more like

17    this is what -- I wish I had you when I was a kid, you know,

18    in school, because of all the different things we were

19    doing.

20        Q.    The Golden Apple award, who participated in

21    electing you to that?

22        A.    The students.

23        Q.    The students.

24        A.    Um-hum.

25        Q.    Do you recall the year that you received that

1    A.    For homeroom.  Eventually, it turned into a

2  regular homeroom for -- because there were so many students

3  in our school, I think the reasoning was, and they needed an

4  empty room.  Since I left the room with my seven, eight --

5  seven or eight students, that room was available.

6         So they started putting students in there, so they

7  would come in.  And they would come in right away.  And I

8  would still be back there trying get to the news.  And be

9  hanging around, sitting on the tables and talking to me

10  while I'm trying to do things.

11    Q.    I understand.

12         MR. LANZILLO:  Those are all questions I have

13         right now.  I may think of something else while

14         Mr. Olds is following up.

15         MR. OLDS:  So we'll take a little break now.

16         (Recess held from 2:02 p.m. to 2:14 p.m.)

17         MR. OLDS:  A few more questions, not a whole lot.

18         (Yarbenet Deposition Exhibit 9 marked for

19          identification.)

20

21                    REDIRECT EXAMINATION

22  BY MR. OLDS:

23

24    Q.    Picture of your classroom; is that right?

25    A.    Oh, yeah, the airplane hanging up and all that

1    stuff.

2        Q.    Are those the things that you got from NASA,

3    the --

4        A.    No, those are from the students who built them.

5    If you look in the dead center of the picture, below the TV

6    is a cabinet, and that's where many of the very expensive

7    things were kept.

8        Q.    Okay.

9        A.    Okay.

10       Q.    This is the doorway to your classroom; is that

11   right?

12       A.    Um-hum.

13       Q.    Is that black construction paper on the doorway?

14       A.    I'm not sure if that's just the back of the wall

15   there or what.

16       Q.    Okay.  Let me get it closer to you.

17       A.    I can't tell.

18       Q.    Okay.  But that is a picture of your --

19       A.    Yeah.

20       Q.    -- classroom.

21       A.    Um-hum.

22       Q.    There was a -- apparently, the school provided a

23   sexual harassment training for faculty members sometime in

24   1995.  Did you attend that training session?

25       A.    We had so many things that -- you know, I honestly